**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 02 2018

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

CHRISTOPHER MILLER and )
KACI MILLER, )
)
            **Plaintiffs,** )
)
vs. )
)
FIRST AUTOMOTIVE SERVICE ) CIVIL ACTION NO: _4:18cv502-DPM_
CORPORATION, CREDIT )
ACCEPTANCE CORPORATION, and )
JOHN DOES 1-10 )
) This case assigned to District Judge _Marshall_
            **Defendants.** ) and to Magistrate Judge _Kerr_

### NOTICE OF REMOVAL

Please take notice that Defendant Credit Acceptance Corporation ("Credit Acceptance")

hereby removes the above-captioned action from the Circuit Court of Faulkner County, Arkansas

to the United States District Court for the Eastern District of Arkansas, Western Division,

pursuant to 28 U.S.C. § 1441 *et seq.*, on the basis of the following facts which demonstrate the

existence of subject matter jurisdiction in this Court:

1.      On or about June 27, 2018, Plaintiffs commenced this civil action, which was

assigned Case No. 23CV-18-955 in the Circuit Court of Faulkner County, Arkansas by filing a

complaint. True and correct copies of all process, pleadings, and orders served upon Credit

Acceptance to date in the Circuit Court of Faulkner County, Arkansas are attached hereto

collectively as Exhibit 1.

2.      On July 3, 2018, Credit Acceptance was served with a summons and complaint,

the initial pleading setting forth the purported claims for relief. This Notice of Removal is timely

since it is being filed within 30 days after receipt of the complaint. 28 U.S.C. § 1446(b).

3.      As more fully described below, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332 because it is a civil action in which the amount in controversy exceeds the sum of $75,000.00, exclusive of costs and interest, and it is between citizens of different states.

### The Amount in Controversy Is Satisfied

4.      First, it is apparent that the amount in controversy exceeds $75,000.00. In the complaint, Plaintiffs allege that Defendants First Automotive Service Corporation ("First Automotive") and Credit Acceptance wrongfully denied repairs to Plaintiffs' purchased vehicle that were covered under a vehicle service contract. Complaint, ¶ 1. Plaintiffs further allege that Defendants repossessed Plaintiffs' purchased vehicle even though Plaintiffs were not in default at the time of repossession. Complaint, ¶¶ 1, 37. Plaintiffs assert claims for violation of Ark. Code Ann. § 4-9-503, conversion, violations of the Arkansas Deceptive Trade Practices Act, and fraud. Complaint, ¶¶ 36-56. Plaintiffs seek injunctive relief, compensatory damages, statutory damages, attorneys' fees, and punitive damages. Complaint, ¶¶ 36-57.

5.      Plaintiffs seek "actual damages" for their claims. The measure of damages for conversion is the fair market value of the property at the time and place of conversion. *Durham v. Smith*, 2010 Ark. App. 329, at 9, 374 S.W.3d 799, 805. When Plaintiffs purchased the vehicle approximately a year before the alleged conversion, the purchase price was $22,900. Thus, the fair market value of the purchased vehicle is approximately $20,000.

6.      In addition to compensatory damages, Plaintiffs also request "an award of punitive damages." This Court has held that the jurisdictional amount in controversy threshold is met where "the claims originally asserted by [the plaintiff] could, that is might, legally satisfy the amount in controversy requirement." *Roudachevski v. All-American Care Ctr., Inc.*, No. 4:11-

CV-00230 SWW, 2011 U.S. Dist. LEXIS 38317, at *15, 2011 WL 1213087, at *5 (E.D. Ark. Mar. 31, 2011); *see also Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002) (noting the jurisdictional fact "is not whether damages are greater than the requisite amount, but whether a fact finder might legally conclude they are").

      7.      Punitive damages are included in the amount in controversy, and the Supreme Court has directed judges and juries to peg the amount of punitive damages to the amount of compensatory damages, using a ratio or maximum multiple. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003) (stressing that no bright-line rule limits the ratio and egregious acts combined with small compensatory damages may justify larger ratio); *see also Walker v. Old Reliable Cas. Co.,* No. 4:13CV04122-SOH, 2014 U.S. Dist. LEXIS 169002, at *9, 2014 WL 6872903, at *3 (W.D. Ark. Dec. 4, 2014) ("For the purposes of the amount in controversy calculations, the Court notes that a potential punitive-to-compensatory damages ratio of up to 6:1 is acceptable."). Here, if a 6:1 ratio were employed, punitive damages associated with a $20,000 compensatory award would exceed $75,000 by themselves. Indeed, when combined with the requested compensatory award, a ratio of 3:1 satisfies the amount in controversy.

      8.      In addition, statutory attorney's fees count toward the jurisdictional minimum calculation. *Rasmussen v. State Farm Mut. Auto. Ins. Co.*, 410 F.3d 1029, 1031 (8th Cir. 2005). If Plaintiffs were to succeed on the merits, it would be in the Court's discretion to award a reasonable attorney's fee pursuant to the Arkansas Deceptive Trade Practices Act, codified at Ark. Code Ann. § 4-88-113(f). *See G & K Servs. Co., Inc. v. Bill's Super Foods, Inc.*, 766 F.3d 797, 802 (8th Cir. 2014). Such a fee is likely to exceed $10,000 if Plaintiffs were to prevail.

9.     Additionally, Plaintiffs seek an injunction in relation to the repossession of the purchased vehicle. Plaintiffs further seek statutory damages associated with the repossession. Here, the equitable relief and statutory damages sought also contribute to the amount in controversy.

10.    When the requests for compensatory damages, punitive damages, statutory attorney's fee, statutory damages, and injunctive relief are combined, it is clear that the amount in controversy exceeds $75,000.00, exclusive of costs and interest.

## Complete Diversity Exists

11.    Second, there is complete diversity between Plaintiffs and Defendants. Plaintiffs' complaint alleges that they are residents of Faulkner County, Arkansas. Complaint, ¶ 2. For purposes of diversity jurisdiction, Plaintiffs are citizens of Arkansas. Credit Acceptance is a Michigan corporation with its principal place of business in the State of Michigan. Complaint, ¶ 4. First Automotive is a New Mexico corporation with its principal place of business in the State of New Mexico. Complaint, ¶ 3. Accordingly, Credit Acceptance is a citizen of Michigan and First Automotive is a citizen of New Mexico for purposes of determining diversity. 28 U.S.C. § 1332(c)(1). Thus, at the time of the filing of the Complaint and at the present time, there is complete diversity between Plaintiffs and Defendants.

## Remaining Procedural Issues

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1441(a) because it is the district and division embracing the place where the state court action is pending. 28 U.S.C. § 83(a)(2).

13.    No previous application has been made for the relief requested herein.

14.     In accordance with 28 U.S.C. § 1446(b)(2)(A), First Automotive consents to the removal of this action. Its written consent is included in this Notice.

15.     This Notice of Removal has been served on all named parties to the removed case.

16.     A written Notice of Filing of Notice of Removal, together with a copy of this Notice, will be filed with the clerk of the Court for the Circuit Court of Faulkner County, Arkansas, and will be served upon Plaintiffs, as required by 28 U.S.C. § 1446(b).

WHEREFORE, Defendant Credit Acceptance Corporation asks this Court to assume jurisdiction over this matter and for all other proper relief to which it is entitled.

Respectfully submitted,

Martin A. Kasten, Ark. Bar No. 99100
Phillip M. Brick, Jr., Ark. Bar No. 2009116
FRIDAY, ELDREDGE & CLARK, LLP
400 West Capitol Avenue
Suite 2000
Little Rock, Arkansas 72201-3522
(501) 376-2011
mkasten@fridayfirm.com
pbrick@fridayfirm.com

Attorneys for Defendant Credit Acceptance Corporation

By: _____
       Phillip M. Brick, Jr.

WRITTEN CONSENT OF FIRST AUTOMOTIVE
SERVICE CORPORATION

Consent to removal on behalf of First Automotive
Service Corporation

Matthew L. Brunson, Ark. Bar No. 2016214
MITCHELL, WILLIAMS, SELIG,
  GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Telephone: (501) 688-8800
mbrunson@mwlaw.com

*Attorneys for First Automotive Service Corporation*

By: /s/ Matthew L. Brunson
      Matthew L. Brunson

## CERTIFICATE OF SERVICE

I, Phillip M. Brick, Jr., do hereby certify that a copy of the foregoing was served on this

2nd day of August, 2018, to:

Will Crowder
Corey D. McGaha
CROWDER MCGAHA, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223-0043

Matthew L. Brunson
MITCHELL, WILLIAMS, SELIG,
  GATES & WOODYARD, P.L.L.C.
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201

By: _____
    Phillip M. Brick, Jr.

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 12 Pages

# IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
## _____ DIVISION

**CHRISTOPHER MILLER and
KACI MILLER**                                                        **PLAINTIFFS**

v.                            Case No._____

**FIRST AUTOMOTIVE SERVICE
CORPORATION, CREDIT ACCEPTANCE
CORPORATION, and JOHN DOES 1-10**              **DEFENDANTS**

---

## COMPLAINT

---

Comes now the Plaintiffs Christopher Miller and Kaci Miller through their attorneys CROWDER McGAHA, LLP, and for their Complaint against First Automotive Service Corporation, Credit Acceptance Corporation and John Does 1-10, state:

1.    This Action is for damages, costs, and attorney's fees for the Defendants' wrongful denial for covered repairs to Plaintiffs' used 2010 Chevrolet Silverado 1500 Crew Cab VIN 3GCRKPE37AG195329 (the "Vehicle"), and the resulting wrongful repossession.

## PARTIES, JURISDICTION & VENUE

2.    Plaintiffs are adult individuals who reside in Faulkner County, Arkansas.

**EXHIBIT 1**

3.     Defendant   First   Automotive   Service   Corporation   ("First Automotive") is a New Mexico Corporation. First Automotive may be served with process through: Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425. First Automotive sells vehicle service contracts ("VSC") for retail installment contracts acquired by Credit Acceptance Corporation. Under the VSC, First Automotive is listed as the "Administrator Obligator."

4.     Defendant Credit Acceptance Corporation is a Michigan Corporation. Credit Acceptance Corporation may be served with process through: Corporation Service Company, 300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425.

5.     John Does 1-10 are persons/entities whose identity is unknown to Plaintiffs and Plaintiffs' attorney who may have liability for the causes of action. An affidavit of same from Plaintiffs' attorney is attached hereto as Exhibit A and incorporated by reference under Ark. Code Ann. § 16-56-125(c).

6.     The venue is proper here, because each of the causes of action alleged accrued in Faulkner County, Arkansas, and because Defendants conduct substantial business in this county.

7.     This Court has subject-matter jurisdiction over this Action under Ark. Const. Amend. 80 §6(A) which makes the trial court "the original jurisdiction of all justiciable matters not otherwise assigned pursuant to the Arkansas Constitution."

8.     This Court has personal jurisdiction over Defendants under Ark. Code Ann. § 16-4-101(B) and the due process clause of the Fourteenth Amendment to the United States Constitution.

## FACTS

9.     On March 3, 2016, Plaintiffs purchased the Vehicle from II Friends Auto Sales in Greenbrier, Arkansas.

10.    The Plaintiffs financed the sale through Credit Acceptance Corporation (CAC).

11.    The Plaintiffs entered into a retail installment sales contract with CAC. *See* Exhibit No. 1, Retail Installment Sales Contract.

12.    The retail installment sales contract required Plaintiffs to make monthly payments of $513.00.  At all times, Plaintiffs made timely monthly payments on the Vehicle.

13.    The Plaintiffs also purchased and financed a First Automotive VSC for $1,619.00.

14.     When the Plaintiffs' purchased the Vehicle, it did not have the original,

factory tires.

15.     Plaintiffs were provided a brochure for a First Automotive by

SouthwestRe Superior Protection Plan. The brochure represented:

        a.      You've probably experienced or witnessed an unexcepted
vehicle breakdown. These are always inconvenient and
often expensive. But with mechanical protection from
Superior Protection Plan you can be protected from the
high cost of unexpected mechanical breakdowns and
component failures. Superior Protection Plan is the
intelligent choice to protect you from the high cost of
automotive mechanical breakdowns.

        b.      VEHICLE SERVICE CONTRACTS INCLUDE
VEHICLE PROTECTION

            Superior Protection Plan pays for the costs of parts and
labor covering the repair or replacement of major
component parts.

*See* Exhibit No. 2, Superior Protection Plan Brochure.

16.     The VSC provides coverage for:

**1.      Engine**–Engine Block and Cylinder Heads are covered
when damaged due to the failure of an internally Lubricated Part.
All internal Lubricated Parts, harmonic, harmonic balancer,
turbocharger, supercharger, timing gear, chain and bolt, head
gasket, timing cover, timing belt, intake and exhaust manifolds,
valve covers, oil pan and engine mounts.

*See* Exhibit No. 3, Vehicle Service Contract.

17.     After Plaintiffs purchased the Vehicle, on or about July 22, 2016, Plaintiff replaced the original tires with aftermarket tires they bought. Christopher Miller is a welder and needed the tires for his job.

18.     On or about January 11, 2017, Plaintiffs noticed the Vehicle's oil pressure loss warning light came on, and the Vehicle's engine made a grinding knocking noise.

19.     On or about January 11, 2017, Plaintiffs took the Vehicle to Crain Buick GMC of Conway ("Crain Buick") for repairs.

20.     The service technician at Crain Buick noted the Vehicle made a grinding and knocking noise. *See* Exhibit No. 4, Crain Buick Repairs, January 11, 2017. The service technician replaced the oil relief valve and compressor and added five quarts of oil.

21.     Crain Buick repaired the Vehicle's oil pressure loss issue, submitted the claim to First Automotive. Southwestre, Inc. ("SouthwestRe"), paid Crain Buick $1,348.09. *See* Exhibit No. 5, SouthwestRe Payment. Plaintiffs paid the $100.00 deductible. SouthwestRe is a "Third Party Administrator," for First Automotive, also based out of Albuquerque, New Mexico.

22.    Plaintiffs again experienced the oil pressure loss and the grinding knocking noise. On or about June 9, 2017, Plaintiffs took the Vehicle back to Crain Buick. The Vehicle remained at Crain Buick for the entire month of June.

23.    On June 12, 2017, Crain Buick tore down the engine to diagnose the issue. The technician had the oil pan off of the Vehicle and took the rod cap off the pistons.

24.    Crain Buick found:

EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.015, SPEC NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD STARTED TO SPIN. SCORED CRANKSHAFT AND #4 CYLINDER WALL.

*See* Exhibit No. 6, Crain Buick Repairs, June 12, 2017.

22.    Crain Buick billed $840.00 for the engine tear down.

23.    Defendants (or one of their contractors) sent an inspector to Crain Buick. The inspector took photographs of the Vehicle, including the point of failure and took notes, and left the dealership.

24.    The Crain Buick technician noted that the issues with the Vehicle were caused by the failure of the engine's internally lubricated part.

25.    Crain Buick invoiced Plaintiffs $1,004.85 for the engine tear down, with applicable tax and a miscellaneous charge.

26.     On or about July 12, 2017, Plaintiffs called and went to Crain Buick to inquire about the repair status of the Vehicle. Crain Buick told Plaintiffs that the warranty was canceled because of an issue with "mileage tampering."

27.     Christopher Miller came back to Crain Buick later that week to remove his tools from the Vehicle and his tires.

28.     The next day, Christopher Miller returned with the original tires and gave them to Crain Buick. Christopher Miller asked what it would cost to have the Vehicle put back together. Christopher Miller said he found an engine to put in it. He was told it would cost $950.00 plus tax to put the engine. Christopher Miller was told he would need a deposit for the repairs. Christopher Miller agreed to deposit after he received his next paycheck within a week.

29.     On July 17, 2017, Credit Acceptance issued an order to A Professional Auto Recovery to Impound and Repossess the Vehicle. *See* Exhibit No. 7, Order to Impound Repo, July 17, 2017.

30.     On July 21, 2017, First Automotive Service Corporation and Western Diversified Services, Inc., formally canceled the Vehicle's warranty. The reason what that the Vehicle had "oversized wheels and tires and tires that were not to the manufacturer's original specifications."

31. On or about July 21, 2017, Christopher Miller learned his Vehicle had been towed from Crain Buick.

32. Christopher Miller reported the Vehicle as stolen.

33. On or about July 21, 2017, CAC contacted Christopher Miller and said he had fallen behind on his payments, he was up for repossession, and CAC needed to get the truck. CAC also said the Vehicle was reported abandoned.

34. By a letter dated July 28, 2017, Plaintiffs were notified that CAC had repossessed the Vehicle from Crain Buick. CAC said it had the Vehicle "because you broke promises in our agreement." However, when CAC repossessed the Vehicle, the Plaintiffs were not delinquent on any payments and had broken no promises in the retail installment contract.

35. As of August 23, 2018, CAC reported to Plaintiffs' Credit Reporting Agencies that the Vehicle was in a "Voluntary Surrender" Status.

## COUNT I—DAMAGES AND INJUNCTIVE RELIEF FOR VIOLATION OF ARK. CODE ANN. § 4-9-503

36. Plaintiffs incorporate all paragraphs herein.

37. Ark. Code Ann. § 4-9-503 requires a debtor to be in default for repossession to be proper. Plaintiffs were not in default at the time of the repossession.

38.     Under Ark. Code Ann. § 4-9-507, Plaintiffs can recover as losses incurred, and minimum statutory damages of the credit service charge plus ten percent of the amount of debt or the time price differential plus ten percent of the cash price.

## COUNT II-CONVERSION

39.     Plaintiffs incorporate all paragraphs herein.

40.     Plaintiffs owned the Vehicle.

41.     Defendants intentionally took and exercised dominion or control over the Vehicle in violation of Plaintiffs' rights.

42.     As a proximate cause of Defendants' conduct, Plaintiff has suffered damages.

## COUNT III-VIOLATIONS OF THE ARKANSAS DECEPTIVE TRADE PRACTICES ACT ("ADTPA")

43.     Plaintiffs incorporate all paragraphs herein.

44.     The ADTPA is designed to protect consumers from deceptive, unfair, and unconscionable trade practices. The ADTPA is a remedial statute, which is liberally construed in favor of consumers.

45.     The Defendants' practices violate the following sections of the ADTPA:

    a.    Advertising services with the intent not to sell them as advertised. Ark. Code Ann. § 4-88-107(a)(3).

    b.    Engaging in any unconscionable, false, and deceptive acts or practices in business, commerce or trade, Ark. Code Ann. § 4-88-107(a)(10).

46.     On information and belief, Defendants intended that Plaintiffs rely on their representations and omissions, namely that Defendants would cancel—through pretext—the VSC when presented with a covered repair.

47.     The Defendants' conduct has caused Plaintiffs to suffer actual damages or injury, including monetary loss, and to incur attorney's fees.

## COUNT IV–FRAUD

48.     Plaintiffs incorporate all paragraphs herein.

49.     Defendants induced Plaintiffs to purchase the Vehicle by misrepresenting material facts and omission of material facts, by, among other things, that the VSC would cover the costs of parts and labor covering the repair or replacement of major component parts.

50.     Defendants knew its omissions were material and important.

51.     Defendants intended to deceive Plaintiffs and intended for him to rely on their representations, which they did, to their detriment, suffering damages.

52.    Plaintiffs are entitled to damages in an amount to be proven at trial.

## COUNT IV–PUNITIVE DAMAGES

53.    Plaintiffs incorporate all paragraphs herein.

54.    Defendants knew or ought to have known, considering the circumstances, their conduct would naturally and probably result in damage, and it continued such conduct with malice or in reckless disregard of the consequences from which malice may be inferred.

55.    Defendants intentionally pursued a course of conduct to cause damages.

56.    Based on Defendants' conduct, an award of punitive damages is appropriate.

## JURY DEMAND

57.    Plaintiffs demand a jury trial.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and against Defendants for:

A.    Statutory damages;

B.    Actual damages;

C.    Attorney's fees, litigation expenses and costs of suit;

D.    Pre-judgment and postjudgment interest; and

E.     Such other and further relief as the Court deems proper.

Date: June 27, 2018                          Respectfully submitted,

                                             Will Crowder (Ark. Bar No. 2003138)
                                             Corey D. McGaha (Ark. Bar No. 2003047)
                                             CROWDER MCGAHA, LLP
                                             5507 Ranch Drive, Suite 202
                                             Little Rock, AR 72223-0043
                                             Phone: (501) 205-4026
                                             Fax:    (501) 367-8208
                                             wcrowder@crowdermcgaha.com
                                             cmcgaha@crowdermcgaha.com

                                             *Attorneys for Plaintiffs*

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 5 Pages

# EXHIBIT NO. 1

# RETAIL INSTALLMENT
# SALES CONTRACT

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**

Not required to mail or fax this copy to Credit Acceptance

## RETAIL INSTALLMENT CONTRACT

ACCOUNT # 82629642

LOT # 7KJ

| Buyer Name and Address | Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| KACI D MILLER<br>13 BUD CHUCK LN<br>CONWAY, AR 72032 | CHRISTOPHER R MILLER<br>13 BUD CHUCK LN<br>CONWAY, AR 72032 | II FRIENDS AUTO SALES LLC<br>122-124 S. BROADVIEW<br>GREENBRIER, AR 72058 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown on Page 2 as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2010 Chevrolet | Silverado 1500 Crew Cab 4WI | WHITE | 3GCRKPE37AG195329 | 110,687 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of |
|---|---|---|---|---|
| 16.99 % | $ 10,139.60 | $ 20,659.00 | $ 30,798.60 | $ 4,500.00 is<br>$ 35,298.60 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due | |
|---|---|---|---|
| 60 | $ 513.31 | Monthly beginning | April 03, 2016 |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.

**Late Charge:** If a payment is not made in full within 10 days after it is due, You will pay a late charge of $5.00 or 5.0% of the part of the payment that is late, whichever is less.

**Prepayment:** If you pay off early, You may be entitled to a refund of part of the Finance Charge.

**Additional Information:** Please read this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

---

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $500. If you do not have this insurance, we may, at our option, buy property insurance in accordance with the terms of this Contract.

If you purchase Physical Damage Insurance from or through Us as part of this Contract, you authorize Us to add the cost of that insurance to the amount financed under this Contract.

Buyer's Signature: x_____ *** DO NOT SIGN ***        Buyer's Signature: x _____ *** DO NOT SIGN ***

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

Changes to this Contract. Any change in the terms of this Contract must be in writing and signed by Us. No oral changes are binding.

Buyer's Signature: x _____ *Kaci D Miller*        Buyer's Signature: x _____ *Christopher R Miller*

ARKANSAS CREDIT ACCEPTANCE CORPORATION (05-14)
© 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 1 of 4

Not required to mail or fax this copy to Credit Acceptance

## ITEMIZATION OF AMOUNT FINANCED

1. **Cash Price** (Including accessories and improvements to the Vehicle) ..................................... $ 22,900.00 (1)
2. **Sales Tax** ................................................................................................................ $ N/A (2)
3. **Down-Payment Calculation:**  **Cash Down Payment** .................................... $ 1,500.00 (A)

   Trade-In Description:  Gross Trade-In ............. $ 3,000.00 (B)

   Make: LINC

   Model: TOW    Payoff Made by Seller  $ 0.00 (C)

   Net Trade-In (If negative number, insert "0" in line 3(D) and itemize difference in 5(F) below) (B-C) $ 3,000.00 (D)

   **Total Down Payment**   (A + D) $ 4,500.00 (3)
4. **Unpaid Balance of Cash Price** (1+ 2 less 3) ....................................................... $ 18,400.00 (4)
5. **Other Charges Including Amounts Paid to Others on Your Behalf.**

   *(NOTICE: A portion of these charges may be paid to or retained by Us.)

   A.  *Cost of Required Physical Damage Insurance Paid to Insurance Company .................. $ N/A (A)

   B.  *Cost of Optional Extended Warranty or Service Contract Paid to the Company named below .... $ 1,619.00 (B)

   C.  Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest .... $ N/A (C)

   D.  Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration .......... $ 10.00 (D)

   E.  **SERVICE AND HANDLING FEE.  A SERVICE AND HANDLING FEE IS NOT AN OFFICIAL FEE.  A SERVICE AND HANDLING FEE IS NOT REQUIRED BY LAW AND MAY BE CHARGED TO THE CUSTOMER FOR PERFORMING SERVICES AND HANDLING DOCUMENTS RELATING TO THE CLOSING OF A SALE OR LEASE.  THE SERVICE AND HANDLING FEE MAY RESULT IN PROFIT TO THE DEALER.  THE SERVICE AND HANDLING FEE DOES NOT INCLUDE PAYMENT FOR THE PREPARATION OF LEGAL DOCUMENTS.  THIS NOTICE IS REQUIRED BY LAW.** ............ $ N/A (E)

   Other Charges (Seller must identify who will receive payment and describe purpose)

   F.  to N/A                                     for lien or lease payoff ..................... $ N/A (F)

   G.  *to Western Diversified Services, Inc.   for Optional GAP Protection ............... $ 630.00 (G)

   H.  *to N/A                           for N/A ........................................... $ N/A (H)

   I.  *to N/A                          for N/A ............................................ $ N/A (I)

   J.  *to N/A                          for N/A ............................................ $ N/A (J)

   K.  *to N/A                          for N/A ............................................ $ N/A (K)

   Total of Other Charges and Amounts Paid to Others on Your Behalf ......................... $ 2,259.00 (5)
6. **Less Prepaid Finance Charge** ........................................................................ $ N/A (6)
7. **Amount Financed - Unpaid Balance** (4 + 5 less 6) ............................................. $ 20,659.00 (7)

**OPTIONAL WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You wish to purchase an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 1,619.00     Term: 24 MOS. \ 24000 Miles   Company:  First Automotive Service Corp

> *Kaci D Miller*                    03/03/2016        *Christopher R Miller*              03/03/2016
  Buyer's Signature              Date                Buyer's Signature                 Date

**GAP PROTECTION:** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5G of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost $ 630.00     Term:  60 MOS.     Provider: Western Diversified Services, Inc.

> *Kaci D Miller*                    03/03/2016        *Christopher R Miller*              03/03/2016
  Buyer's Signature              Date                Buyer's Signature                 Date

**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

**NOTICE TO THE BUYER:  Do not sign this Contract before You read it or if it contains any blank spaces. You are entitled to an exact copy of the Contract You sign.**

You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.

> Buyer's Signature: x  *Kaci D Miller*              Buyer's Signature: x  *Christopher R Miller*

Seller: II FRIENDS AUTO SALES LLC            By:  *Ken Clagett*                Title:  AGENT

This Contract is signed by the Seller and Buyer(s) hereto this  3rd  day of  March                  , 2016

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on Page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Bad Check Charge.** You agree to pay Us a bad check charge of $30 (or such other amount permitted by applicable law) for any check or like instrument given by You to Us that is returned by Your bank because of insufficient funds or because Your bank account was closed, to the extent permitted by applicable law.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada without our written permission.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Prepayment.** You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. We will not credit or refund amounts less than $1.00, if permitted by applicable law.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

REQUIRED PHYSICAL DAMAGE INSURANCE. YOU AGREE TO HAVE PHYSICAL DAMAGE INSURANCE COVERING LOSS OR DAMAGE TO THE VEHICLE FOR THE TERM OF THIS CONTRACT. THE INSURANCE MUST COVER OUR INTEREST IN THE VEHICLE. IF YOU DO NOT BUY PHYSICAL DAMAGE INSURANCE WHICH COVERS BOTH INTERESTS IN THE VEHICLE, WE MAY, IF WE DECIDE, BUY INSURANCE WHICH COVERS ONLY OUR INTEREST.

WE ARE UNDER NO OBLIGATION TO BUY ANY INSURANCE, BUT MAY DO SO IF WE DESIRE. IF WE BUY EITHER OF THESE COVERAGES, WE WILL LET YOU KNOW WHAT TYPE IT IS AND THE CHARGE YOU MUST PAY. THE AMOUNT YOU MUST PAY WILL BE THE PREMIUM FOR THE INSURANCE AND A FINANCE CHARGE AT THE ANNUAL PERCENTAGE RATE SHOWN ON PAGE 1 OF THIS CONTRACT. YOU AGREE TO PAY THE AMOUNT AND FINANCE CHARGE IN EQUAL INSTALLMENTS ALONG WITH THE PAYMENTS SHOWN ON THE PAYMENT SCHEDULE ON PAGE 1.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Insurance, Maintenance or Service Contracts.** This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

ARKANSAS CREDIT ACCEPTANCE CORPORATION (05-14)
© 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 4

Buyer's Initials

Buyer's Initials

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS (cont.)

**Starter Interruption Device and GPS.** You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow Us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

**Sale of the Repossessed Vehicle.** Any notice that is required to be given to You of an intended sale or transfer of the Vehicle will be mailed to Your last known address, as reflected in our records, in a reasonable period before the date of the intended sale or transfer (or such other period of time as is required by law). If the Vehicle is sold, We will use the net proceeds of the sale to pay all or part of Your debt.

The net proceeds of sale will be figured this way: Any charges for taking, holding, preparing for sale, and selling the Vehicle, and any attorney fees and court costs, if permitted by law, will be subtracted from the selling price.

If You owe Us less than the net proceeds of sale, We will pay You the difference, unless We are required to pay it to someone else. For example, We may be required to pay a lender who has given You a loan and has also taken a security interest in the Vehicle.

If You owe more than the net proceeds of sale, You will pay Us the difference between the net proceeds of sale and what You owe when We ask for it. If You do not pay this amount when asked, You may also be charged interest at the highest lawful rate until You do pay all You owe to Us.

WARRANTIES SELLER DISCLAIMS. YOU UNDERSTAND THAT THE SELLER IS NOT OFFERING ANY WARRANTIES AND THAT THERE ARE NO IMPLIED WARRANTIES OF MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY OTHER WARRANTIES, EXPRESS OR IMPLIED BY THE SELLER, COVERING THE VEHICLE UNLESS THE SELLER EXTENDS A WRITTEN WARRANTY OR SERVICE CONTRACT WITHIN 90 DAYS FROM THE DATE OF THIS CONTRACT.

THIS PROVISION DOES NOT AFFECT ANY WARRANTIES COVERING THE VEHICLE THAT MAY BE PROVIDED BY THE VEHICLE MANUFACTURER.

**Collection Costs.** If We hire an attorney to collect what You owe and the attorney is not our salaried employee, You will pay our reasonable attorney's fees and court costs as permitted by applicable law.

**Delay in Enforcing Rights.** We can delay or refrain from enforcing any of our rights under this Contract without losing them. For example, We can extend the time for making some payments without extending others. If any part of this Contract is not valid, all other parts will remain enforceable.

**Interest After Maturity.** You further agree to pay interest at the highest rate permitted by applicable law on amounts that remain unpaid after maturity of this Contract. For the purposes of this provision, maturity means the earlier of the date Your final payment is due or the date We accelerate the Contract.

**Judgment Rate.** Interest on any judgment awarded on this Contract will be at the Annual Percentage Rate stated on Page 1 of this Contract, or at the highest rate permitted by applicable law.

**Governing Law.** The terms of this Contract are governed by the law of the state of the Seller's address shown on Page 1 of this Contract, except to the extent preempted by applicable federal law.

## ASSIGNMENT

FOR VALUE RECEIVED, Seller hereby assigns and transfers all Seller's right, title and interest in and to this Contract, and in and to the Vehicle described herein, to CREDIT ACCEPTANCE CORPORATION ("Assignee"), its successors and assigns, pursuant to and in accordance with the terms and conditions set forth in the existing dealer agreement between Seller and Assignee in effect on the date hereof. Seller gives Assignee full power, either in Assignee's name or in Seller's name, to take all actions which Seller could have taken under this Contract. In order to induce Assignee to accept assignment of this Contract, Seller represents and warrants to Assignee as set forth in the existing dealer agreement.

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth above. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: II FRIENDS AUTO SALES LLC    By: *Ken Clagett*    Title: AGENT

COPY OF ELECTRONIC ORIGINAL

ARKANSAS CREDIT ACCEPTANCE CORPORATION (05-14)
© 2014 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 4 of 4

Buyer's Initials

Buyer's Initials

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 2 Pages

# EXHIBIT NO. 2

# SUPERIOR PROTECTION
# PLAN BROCHURE

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**



FIRST AUTOMOTIVE
by SouthwestRe®



MILL
META
REPA

*Christopher Mil*

501-428-0619

ngratulations on the purchase of your
icle. You have just made one of the
gest purchases of your life and you now
e the opportunity to protect it.

've probably experienced or witnessed an unexpected
icle breakdown. These are always inconvenient and often
ensive. But with mechanical protection from Superior Protec-
n Plan you can be protected from the high cost of unexpected
chanical breakdowns and component failures.

erior Protection Plan is the intelligent choice to protect you
n the high cost of automotive mechanical breakdowns.



Superior
Protection P



PROTECTING YOUR VEHICLE

ON THE

## CLE  SERVICE CONTRACTS INCLUDE

### HICLE PROTECTION
perior Protection Plan pays for the costs of parts and labor
ring the repair or replacement of major component parts.

### TIONAL ACCEPTANCE
perior Protection Plan contracts are accepted by repair facili-
s nationwide.

### NTAL REIMBURSEMENT
ou are in need of a rental vehicle while a covered repair is
formed, Superior Protection Plan will allow rental coverage
h no deductible.

### WING COVERAGE
erior Protection Plan provides for towing reimbursement
en in conjunction with the repair of a covered item.

### CREASED RESALE VALUE
ou sell your vehicle, the remaining Superior Protection Plan
erage can be transferred to the new owner, potentially
reasing your resale price.





Superior
Protection Plan
Keeping You on the Road

2400 Louisiana Blvd. NE, Bldg. 4
Albuquerque, New Mexico 87110
Claims: 866-410-6748

Note: This brochure is not a vehicle service contract but is an
outline of coverage available through the program. For complete
details concerning terms, conditions, and exclusions please refer
to your actual vehicle service contract.

AWH-XX-XX-02





Credit
Acceptan
We change

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 10 Pages

# EXHIBIT NO. 3

# VEHICLE SERVICE CONTRACT

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas
**PLAINTIFF's COMPLAINT**



**Superior
Protection Plan**
*Keeping You on the Road*

CONTRACT NO.: SP-

CA Approval #

**Toll Free Number: 1-866-410-6748
VEHICLE SERVICE CONTRACT**

**Purchase of the Service Contract is not required in order to purchase or obtain financing for a motor Vehicle**

The words in boldface type (other than the headings in this Contract) are defined in the "Definitions" section.

**CUSTOMER INFORMATION**                  **SELLING DEALER**

| Name, Last | | Name, First | Name | | |
|---|---|---|---|---|---|
| Address | | | Address | | |
| City | State | Zip | City | State | Zip |
| Telephone | | | Telephone | Dealer Account No. | |

**VEHICLE INFORMATION**

| Vehicle Identification Number (VIN) | | | | Current Odometer Reading _____ Miles | New ☐          Used ☐ |
|---|---|---|---|---|---|
| Year | Make | Model | Class | Contract Price $ | Vehicle / Contract Sale Date |
| Lien Holder – Credit Acceptance ( CA )          25505 West Twelve Mile Road, Southfield, MI 48034 | | | | Term of Installment Contract | Vehicle Purchase Price $ |

**CONTRACT INFORMATION**

| **Deductible:  $100**          **Per Visit** | If the eligible **Vehicle** has less than or equal to 100,000 miles on it, **High Tech Coverage** will apply. If the eligible **Vehicle** has between 100,001 and 175,000 miles on it, **Standard Coverage** will apply. If no term information is filled in the term will be 24 months or 24,000 miles, whichever occurs first. |
|---|---|

| **Coverage Type:** | **High Tech 0-100,000 Miles Only** | **Standard 100,001 to 175,000 Miles Only** |
|---|---|---|

In order for this **Contract** to be valid, the following terms must be clear, legible, without correction, and available for use on the **Selling Dealer's** currently installed rate card.

_____ Months _____ Miles

Coverage begins on the **Vehicle / Contract Sale Date** and at the mileage shown on the odometer on that date and expires upon the addition of the number of months or miles specified here, whichever occurs first.  Note: This **Contract** *must* be purchased on the **Vehicle Sale Date**.

| SURCHARGES / OPTIONS  (check all that apply): | Extended Eligibility (Standard Coverage Only) |
|---|---|
| 4X4 / All Wheel Drive _____     Turbocharger _____     Supercharger _____     One Ton _____ | 100,001 – 125,000 Miles (Standard Only) _____ |
| Diesel _____     All Wheel Steering _____ | 125,001 – 150,000 Miles (Standard Only) _____ |
| 11 Model Years* _____     12 Model Years* _____     13 Model Years* _____ | 150,001 – 175,000 Miles (Standard Only – 24/24 Max Term) _____ |
| *Based on current calendar year. | |
| **Vehicles** with more than 100,000 miles on the odometer on the **Vehicle / Contract Sale Date** are ineligible for High Tech coverage. | |

I have read and understand this **Contract**. I understand the above information is subject to verification and this **Contract** may be rejected if any of the above information is incorrect or if the above **Vehicle** is ineligible for the term or coverage written as determined by the **Administrator Obligor** in its sole discretion.

_____          _____
  CUSTOMER SIGNATURE                        AUTHORIZED REPRESENTATIVE OF SELLING DEALER
  Date: _____             Date: _____

**ADMINISTRATOR OBLIGOR: First Automotive Service Corporation, 2400 Louisiana Blvd. NE, Building 4, Albuquerque, NM 87110, 1-866-410-6748.**
**This is a Contract between You and the Administrator Obligor.** The **Administrator Obligor's** performance under this **Contract** is insured by an insurance policy issued by Dealers Assurance Company, P. O. Box 21185, Upper Arlington, OH 43221, Telephone: 614-459-0364. If a **Covered Repair** is not paid within sixty (60) days after proof of loss has been filed, **You** may file a claim with Dealers Assurance Company at the address listed herein.

## WHAT TO DO IF YOU HAVE A BREAKDOWN:

1. **Take immediate action to prevent further damage to Your Vehicle.**
2. **Take Your Vehicle, or if unable to drive, have it towed to the nearest licensed repair facility.**
3. **Before beginning any repair work on Your Vehicle, call 1-866-410-6748.**

## YOUR OBLIGATIONS

In order for this **Contract** to remain in force, **You** must:

- Change the oil and oil filter in the **Vehicle** at least every six (6) months or 5,000 miles whichever comes first, or at the intervals specified by the **Vehicle Manufacturer**, whichever is less.
- Replace the timing belt in the **Vehicle** at the intervals specified by the **Vehicle Manufacturer**
- Perform all other maintenance and servicing of the **Vehicle** as recommended by the **Vehicle Manufacturer**
- Keep, and make available to the **Administrator** upon request, verifiable signed receipts that show that the above required maintenance and services were timely performed.

In order for a claim payment to be made under this **Contract**:

- **You** must have **Your** repair facility obtain an authorization number from the **Administrator** prior to beginning any repair to a **Covered Part**
- **You** must pay the **Deductible** (if any) for all **Covered Repairs** performed in a single visit to a repair facility
- **You** are responsible for authorizing and paying for any teardown or diagnostic time needed to determine if **Your Vehicle** has a **Covered Breakdown**. If the **Administrator** determines that there is a **Covered Breakdown**, then **We** will pay for the reasonable cost of the teardown and diagnostic time as part of the **Covered Repair**.
- **You** must send all repair documentation requested by the **Administrator** to the following address:

First Automotive Service Corporation, P O Box 30250, Albuquerque, NM 87190-0250

To make a claim, call the **Administrator** toll-free at 1-866-410-6748. Claims Department hours are Monday through Friday, 7 a.m. to 7 p.m., Saturday 8 a.m. to 2 p.m., Central Time. **CLAIMS MUST BE SUBMITTED WITHIN SIXTY (60) DAYS FROM AUTHORIZATION TO QUALIFY FOR REIMBURSEMENT.**

**EMERGENCY REPAIRS:** If emergency repairs covered by this **Contract** are required outside the **Selling Dealer's** or **Administrator's** business hours, **You** should deliver **Your Vehicle** to a licensed repair facility and have the necessary repairs performed at a reasonable and customary charge. On the next business day, **You** should report the repairs to the **Administrator**. To report an emergency repair and obtain a reimbursement, please call the claims number below for instructions. Emergency repairs are only those repairs, which, if not performed, would render **Your Vehicle** inoperable or unsafe to drive and impair its future operation.

## OUR OBLIGATIONS

1. <u>**Covered Breakdowns (Deductible Applies).**</u>  If a **Covered Part** experiences a **Breakdown** during the term of this **Contract**, **We** will pay **You** or the repair facility, less the **Deductible** (if any), up to the **Limits of Liability**, for the repair or replacement, as the **Administrator** deems appropriate, of the **Covered Part(s)** that caused the **Breakdown**, but only if:

- **You** have met **Your** obligations as described in this **Contract**; and
- The **Breakdown** is not one of the excluded **Breakdowns** listed under the heading "**EXCLUSIONS—WHAT THIS CONTRACT DOES NOT COVER**" below.

This **Contract** refers to a **Breakdown** that is covered as a "**Covered Breakdown**." Replacement parts can be of like kind and quality. They may include new, re-manufactured or used parts as determined by the **Administrator**. The use of non-original manufacturer's parts is permitted. **Administrator** reserves the right to inspect any **Vehicle** prior to authorization of a claim.

2. Additional Benefits (No Deductible)

- **Rental Car. We** will reimburse **You** for a rental car at a rate of up to $30.00 for every eight (8) hours of labor time required to complete a **Covered Repair**, up to a maximum of $150.00 per **Covered Breakdown**. If there is a verifiable delay in obtaining a part needed to complete a **Covered Repair**, **We** will reimburse **You** for a rental car for up to an additional two (2) days. Labor time required is determined from the national repair manual in use by the repair facility. **You** must provide the **Administrator** with a valid receipt from a licensed rental agency to obtain reimbursement for a rental car.
- **Towing. We** will reimburse **You** for towing if the **Vehicle** is disabled due to a **Covered Breakdown**, up to a maximum of $50 per **Covered Breakdown**. **You** must provide the **Administrator** with a valid receipt to obtain reimbursement for towing.

## COVERED PARTS

Subject to the terms and conditions of this **Contract**, **We** will pay, or reimburse **You**, for the reasonable costs to repair or replace any or all of the following listed **Covered Parts** (for the coverage specified below that **You** have purchased) that fail as the result of a **Covered Breakdown**, subject to the exclusions listed in the "**EXCLUSIONS—WHAT THIS CONTRACT DOES NOT COVER**" section below. For convenience, the **Covered Parts** are listed next to the **Vehicle** systems to which they relate. The **Vehicle** systems listed are not **Covered Parts**.

## STANDARD COVERAGE

1. **Engine** – Engine Block and Cylinder Heads are covered when damaged due to a failure of an internally **Lubricated Part**. All internal **Lubricated Parts**, harmonic balancer, turbocharger, supercharger, timing gear, chain and bolt, head gasket, timing cover, timing belt, intake and exhaust manifolds, valve covers, oil pan and engine mounts.
2. **Transmission** – Transmission case and all internal **Lubricated Parts**, torque converter, transmission mounts, flex plate, and vacuum modulator.
3. **Drive Axle(s)** – Drive axle housing and all internal **Lubricated Parts**, drive shafts, universal joints, and constant velocity joint unless failure was caused by neglected, torn, cracked or perforated constant velocity joint boot. See exclusion for constant velocity joint boots.
4. **Transfer Case** – Transfer case and all internal **Lubricated Parts**.
5. **Steering** – Steering gear box, or rack, and all internal **Lubricated Parts**, power steering pump, steering column shaft, and steering column shaft couplings, pitman arm, idler arm, tie rod end(s), and drag link.
6. **Electrical** – Alternator, voltage regulator, starter motor & drive, and starter solenoid, ignition module and windshield wiper motor(s).
7. **Air Conditioner** – Condenser, compressor, compressor clutch & pulley, idler pulley & idler pulley bearing, evaporator, receiver dryer and orifice tube, and blower motor. (only if the air conditioner is factory or dealer installed equipment)
8. **Suspension** – Radius arm, control arms, control arm shafts, bearings and bushings, king pin and king pin bushings, strut bar and bushings, stabilizer bar, stabilizer link, stabilizer bushing, spindle, wheel bearings, and torsion bars.
9. **Cooling** – Water pump, engine cooling fan motor, radiator, radiator fan, and fan clutch.
10. **Fuel** – Fuel delivery pump, fuel injectors, and fuel tank.
11. **Brake** – Standard and ABS brake system master cylinder, ABS accumulator, ABS control module, ABS pump, ABS motor, ABS reservoir and ABS wheel speed sensors, power brake cylinder, vacuum assist booster, compensating valve, disc brake caliper(s), wheel cylinder(s), hydraulic lines and hydraulic line fittings.

## High Tech Coverage    (Included on all Vehicles with 0 – 100,000 Miles Only)

12. **High Tech** includes components listed under Standard Coverage above plus: Power seat motor, power antenna motor, power window motor(s), power door lock actuator, fuel pressure regulator, sunroof motor, convertible top motor, driver information gauge indicators relating to the operation of the **Vehicle** (burned out lights/lamps are not covered), body control module, control dash power supply, cruise control module and servo/transducer, fuel sending unit, fuel gauge, metal fuel delivery lines, idle speed motor, manifold pressure sensor, manifold temperature sensor, throttle position sensor, throttle position sensor, mass air flow sensor, oxygen sensor, coolant temperature sensor, vehicle speed sensor, camshaft position sensor, crankshaft angle sensor, E.C.M., primary fuel injection computer, and temperature control programmer.
13. **Seals and Gaskets** – Leaking seals and gaskets on any **Covered Part** listed above, provided that the **Vehicle** had 100,000 miles or less on the **Vehicle Sale Date**. Minor loss of fluid or seepage is considered normal and not considered a **Covered Breakdown**.

**Note:** Fluids are covered when required as part of the repair or replacement of a **Covered Part**.

FORM AWA-XX-XX-05                                                                P.2                                                                REV 02.15.12

## EXCLUSIONS — WHAT THIS CONTRACT DOES NOT COVER

A. This Contract provides no benefits or coverage and We have no obligation under this Contract for:

1. A Breakdown caused by lack of customary, proper or Vehicle Manufacturer's specified maintenance.
2. A Breakdown caused by contamination of or lack of proper fuels, fluids, coolants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.
3. A Breakdown caused by towing a trailer, another vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the Vehicle Manufacturer.
4. Repair of any parts in connection with a Covered Repair when those parts are not necessary for the completion of the Covered Repair or were not damaged by the failure of a Covered Part. Such repair or replacement is an improvement to Your Vehicle and is not covered by this Contract.
5. Pre-existing damage, or a Breakdown that occurred before Your purchase of this Contract, either of which would have been obvious and apparent if that component was inspected at time of purchase.
6. A Breakdown caused by or involving modifications or additions to Your Vehicle unless those modifications or additions were performed or recommended by the Vehicle Manufacturer.
7. A Breakdown caused by off-roading, misuse, abuse, racing or any form of competition.
8. Any cost covered by a repair facility's or part supplier's guarantee, or any cost which would normally be covered by a Vehicle Manufacturer's warranty or a dealer warranty required under state law, whether or not such warranty is in force respecting Your Vehicle.
9. Costs of other damages caused by the failure of a part listed in this Contract as an excluded part.
10. Damage to the Vehicle caused by continued Vehicle operation after the Breakdown of a Covered Part.
11. Any liability, cost or damages You incur or may incur to any third parties, other than for Covered Parts.
12. A Breakdown caused by rust or corrosion.
13. A Breakdown caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting Your Vehicle.
14. A Breakdown outside the continental United States or Canada.
15. Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damage or loss that results from a Breakdown.
16. Liability for damage to property, or for injury to, or death of, any person arising out of the operation, maintenance or use of Your Vehicle whether or not related to a Breakdown.
17. Any cost or other benefit for which the Vehicle Manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.
18. Any part not covered, or excluded, by the original Vehicle Manufacturer's warranty.
19. Loss of compression through gradual failure of rings and valves.
20. Constant velocity joint boots.
21. A gradual reduction in performance capability due to day-to-day routine operation.
22. The maintenance services and parts described in paragraph 1 under "Your Obligations" or in the Vehicle Manufacturer's maintenance schedule for Your Vehicle.
23. Other normal maintenance services and parts, including, without limitation, engine tune-up, spark plugs, ignition wires, distributor cap and rotor, carburetor, EGR valve, batteries, filters, lubricants or fluids, air conditioning refrigerant or engine coolant (except when such lubricants, fluids, refrigerant or coolant must be replaced as part of the repair or replacement of a Covered Part), all hoses and belts that are not specifically listed under "Covered Parts," wiper blades, brake pads and shoes, brake rotors and drums, suspension alignment, tires, wheel balancing, shock absorbers, exhaust system, friction clutch disc and pressure plate, and clutch throw out bearing.
24. Glass, glass framework and fastening adhesives, sealed beam head lamps, light bulbs, lenses, HID assemblies, Safety restraint systems (including air bags), trim, moldings, bright metal, upholstery and carpeting, paint, sheet metal, body panels, structural framework and structural welds.
25. After market accessories or non-original equipment, components and systems not installed by the Vehicle Manufacturer, including, without limitation, anti-theft systems, radio/speaker equipment, telephones, cruise control and sunroof.
26. GPS navigation systems and TV/Video/DVD/Entertainment Systems.
27. Damage to a Covered Part caused by a part that is not a Covered Part.
28. Repairs performed without Our prior authorization.
29. To any parts or systems that are considered alternative fuel or electric/hybrid vehicle related.

B. In addition, this Contract provides no benefits or coverage and We have no obligation under this Contract if:

1. The Vehicle odometer fails, or for any reason does not record the actual mileage of Your Vehicle after purchase date and You do not have it repaired and the mileage certified within thirty (30) days of failure date.
2. Your Vehicle is used for business, deliveries, construction or commercial hauling, or as a postal vehicle, taxi, police car or other emergency vehicle.
3. You rent Your Vehicle to someone else.
4. Your Vehicle is equipped with a snow plow or used to plow snow.
5. You are using or have used Your Vehicle in a manner that is not recommended by the Vehicle Manufacturer.
6. Your Vehicle is modified from the Vehicle Manufacturer's original specifications.

## CANCELLATION OF THIS CONTRACT

#### By You

If the Contract Price **was financed**, You may cancel this Contract by contacting the Administrator.  If the Contract Price **was not financed**, You may cancel the Contract by contacting the Selling Dealer.

#### By Us

We reserve the right to cancel this Contract and will not pay for a Covered Breakdown if:

- The Vehicle odometer fails or for any reason does not record the actual mileage of Your Vehicle after purchase date, and You do not have it repaired and the mileage certified within thirty (30) days of failure date.
- Your Vehicle is used for business, deliveries, construction or commercial hauling, or as a postal vehicle, taxi, police car or other emergency vehicle.
- You rent Your Vehicle to someone else.
- Your Vehicle is equipped with a snow plow or used to plow snow.
- You are using or have used Your Vehicle in a manner that is not recommended by the Vehicle Manufacturer.
- Your Vehicle is modified from the Vehicle Manufacturer's original specifications.

#### By the Lien Holder

You understand and acknowledge that the Lien Holder (if any) has the right to cancel this Contract if the Vehicle is repossessed or destroyed or You are otherwise in default of Your obligations to repay the amount financed by the Lien Holder.

#### Refunds and Charges

If the Contract price **was financed**, You will be entitled to a full refund of the Contract Price, less a $50 cancellation fee, if You provide a written notice of cancellation to the Administrator within the first thirty (30) days after the Contract Sale Date, and if You have not filed a claim under this Contract. If the Contract Price **was not financed,** You will be entitled to a full refund of the Contract Price, less a $50 cancellation fee, if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract Sale Date, and if You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Administrator after the first thirty (30) days after the Contract Sale Date, or if We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract Price (less a $50.00 cancellation fee) based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or Vehicle mileage specified on the first page of this Contract under "Coverage Term." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Contract and the Vehicle mileage on the date purchased. If the Contract Price was financed, any and all refunds will be paid to the Lien Holder.  Any and all refunds will be paid to You by the Selling Dealer in the case that this Contract was not financed.

## DEFINITIONS

- "**Administrator Obligor** and **Administrator**" means First Automotive Service Corporation.
- "**Breakdown**" means the total failure of any **Covered Part** to work as it was designed to work in normal service.
- "**Contract**" means this **Contract**. "**Contract Price**" means the price of this **Contract** as specified on the first page of this **Contract**.
- "**Covered Breakdown**" means a **Breakdown** that is covered by this **Contract**.
- "**Covered Part**" means an item listed as a **Covered Part** in the "**Covered Parts**" section.
- "**Covered Repair**" means a repair to a **Covered Part** approved by the **Administrator**.
- "**Deductible**" means the deductible, if any, shown on the first page of this **Contract**.
- "**Installment Contract**" means the agreement **You** sign with the **Selling Dealer** whereby **You** agree to buy the **Vehicle** identified on the first page of the **Contract**.
- "**Lien Holder**" means the entity (if any) to whom the **Selling Dealer** assigned the **Installment Contract** as identified on the first page of the **Contract**.
- "**Limits of Liability**" has the meaning given to such term in the "Other Important **Contract** Provisions/Limitations — Limits of **Our** Liability" section on this page.
- "**Lubricated Part**" means a part that requires lubrication to perform its function.
- "**Selling Dealer**" means the automobile dealer identified on the first page of this **Contract**.
- "**Term of Installment Contract**" means the period of time during which **You** will pay for the **Vehicle**.
- "**Vehicle**" means the **Vehicle** covered by this **Contract**, as identified on the first page of this **Contract**.
- "**Vehicle Manufacturer**" means the manufacturer of the **Vehicle**.
- "**Vehicle / Contract Sale Date**" means the date the **Vehicle** and this **Contract** were purchased.
- "**Vehicle Purchase Price**" means the price paid for the **Vehicle** excluding dealer prep, tax and additional products.
- "**We**," "**Us**" and "**Our**" refers to the **Administrator** /**Obligor** shown on the first page of this **Contract**.
- "**You**," "**Your**," "**Yours**" and "**I**" refer to the customer identified on the first page of this **Contract**.

## OTHER IMPORTANT CONTRACT PROVISIONS/LIMITATIONS

### Limits of Our Liability

THIS **CONTRACT** IS NOT AN INSURANCE POLICY. IT IS A SERVICE **CONTRACT** BETWEEN **YOU** AND THE **ADMINISTRATOR**.
The **total** benefits payable for a single **Covered Repair** or repair visit shall not exceed the Actual Cash Value (ACV) of the covered **Vehicle** immediately preceding the **Covered Breakdown**. The aggregate of all benefits payable shall not exceed the purchase price of the covered **Vehicle**, excluding any and all fees or other optional products and or services. The Actual Cash Value (ACV) is determined by the Average Trade-In value as indicated in the most current NADA Used Vehicle pricing guide.

### Our Rights Against Others

If **You** receive any benefits under this **Contract**, **We** will be entitled to all **Your** rights of recovery against any manufacturer, repairer or other party who may be responsible to **You** for the costs covered by this **Contract** or for any other payment made by **Us**. If **We** ask, **You** agree to help **Us** enforce these rights. **You** also agree to cooperate and help **Us** in any other matter concerning this **Contract**.

### Entire Agreement

This **Contract** contains the entire agreement between **You** and **Us** and supersedes any and all prior and contemporaneous agreements (both written and verbal) between **You** and **Us** concerning the subject matter of this **Contract**. This **Contract** is not valid unless signed by both **You** and an authorized representative of the **Selling Dealer**.

### When this Contract will End

- This **Contract** will terminate when:
- **Your Vehicle** reaches the time or mileage limitation specified on the first page of this **Contract**
- **You** sell **Your Vehicle** unless this **Contract** is properly transferred as provided in the section of this **Contract** entitled "**HOW COVERAGE MAY BE TRANSFERRED**"
- This **Contract** is cancelled as outlined in the "**CANCELLATION OF THIS CONTRACT**" section.

## HOW COVERAGE MAY BE TRANSFERRED

- If **You** sell **Your Vehicle**, **You** may transfer this **Contract** to the transferee, but only if:
- **You** are the first holder of this **Contract**
- **Your Vehicle** is sold to a private party
- The **Administrator** receives from **You** the completed transfer application (see below) within thirty (30) days after the date **You** sell **Your Vehicle**
- **You** pay the **Administrator** a $50.00 transfer fee
- **You** provide the transferee and **Administrator** with copies of all **Vehicle** maintenance and service receipts as required by this **Contract** (see "**YOUR OBLIGATIONS**").

The transfer will be effective when **You** receive a transfer confirmation letter from the **Administrator**. If the purchase of **Your Vehicle** was financed and **Your Vehicle** is a total loss or is repossessed, **Your** rights and obligations under this **Contract** immediately and automatically transfer to the **Lien Holder**

## TRANSFER APPLICATION

To transfer this **Contract**, complete the form on the bottom of this page and mail it with copies of **Your** maintenance records and **Your** copy of this **Contract** to the **Administrator** at the following address:

First Automotive Service Corporation, P O Box 30250, Albuquerque, NM 87190-0250
Note: The **Administrator** may reject any application for transfer at their discretion.

---

**Administrator Obligor:**

I, _____ (transferor), am transferring this **Contract** in accordance with the provisions stated in this **Contract**. I am enclosing a $50.00 check or money order payable to First Automotive Service Corp. I have provided to the new transferee, and **Administrator Obligor,** copies of all receipts for the maintenance and servicing of the **Vehicle** as required by this **Contract**.

Name of Transferee _____    Contract # _____    VIN # _____

Address _____    City _____    State _____    Zip _____

Date of Transfer _____    Odometer Mileage on Date of Transfer _____

Signature of Transferee _____    Date _____

Signature of Transferor _____    Date _____

---

## STATE LAW DISCLOSURES
(Revised 03/01/09)
FASC-CUS02-4

Some of the states in which **We** are selling **Vehicle Service Contracts** require that **We** make certain additional disclosures to **You** or require that some of the terms and conditions of this **Contract** be different from the standard terms and conditions specified above. These additional disclosures and different terms and conditions are set forth below. They apply to **You** if **You** purchased this **Contract** in one of the states specified below:

### ALABAMA
The paragraph under "**Cancellation of this Contract—Refunds and Charges**" is replaced in its entirety with the following: "**You** will be entitled to a full refund of the **Contract** price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date, and if **You** have not filed a claim under this **Contract**. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days after the **Contract** purchase date, or if **We** or the **Lien Holder** cancels this **Contract** at any time, **You** will be entitled to a prorated refund of the **Contract** price (less a cancellation fee up to $25.00) based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or **Vehicle** mileage specified on the first page of this **Contract** under 'Coverage Term.' **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**. The term of this **Contract** for cancellation purposes will be based on the date **You** purchased **Your Contract** and the **Vehicle** mileage on the date purchased. If the **Contract** price was financed, any and all refunds will be paid to the **Lien Holder**. A ten percent (10%) penalty per month will be added to any refund that is not paid or credited within forty-five (45) days after the **Selling Dealer** receives **Your** request for cancellation. If the **Contract** price was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**."

### ARIZONA
The following paragraph is deleted in its entirety from the first page "I have read and understand this **Contract**. I understand the above information is subject to verification and this **Contract** may be rejected if any of the above information is incorrect or if the above **Vehicle** is ineligible for the term or coverage written as determined by the **Administrator Obligor** in its sole discretion".

Under "**Exclusions – What this Contract does not Cover**": Item A.5 is deleted. Items A.23 through A.26 are amended as follows:
A.23. Other normal maintenance services and parts, including, without limitation, ENGINE TUNE-UP, SPARK PLUGS, IGNITION WIRES, DISTRIBUTOR CAP AND ROTOR, CARBURETOR, EGR VALVE, BATTERIES, FILTERS, LUBRICANTS OR FLUIDS, AIR CONDITIONING REFRIGERANT OR ENGINE COOLANT (except when such lubricants, fluids, refrigerant or coolant must be replaced as part of the repair or replacement of a Covered Part), ALL HOSES AND BELTS THAT ARE NOT SPECIFICALLY LISTED UNDER "COVERED PARTS," WIPER BLADES, BRAKE PADS AND SHOES, BRAKE ROTORS AND DRUMS, SUSPENSION ALIGNMENT, TIRES, WHEEL BALANCING, SHOCK ABSORBERS, EXHAUST SYSTEM, FRICTION CLUTCH DISC AND PRESSURE PLATE, AND CLUTCH THROW OUT BEARING.
A.24. GLASS, GLASS FRAMEWORK AND FASTENING ADHESIVES, SEALED BEAM HEAD LAMPS, LIGHT BULBS, LENSES, HID ASSEMBLIES, SAFETY RESTRAINT SYSTEMS (INCLUDING AIR BAGS), TRIM, MOLDINGS, BRIGHT METAL, UPHOLSTERY AND CARPETING, PAINT, SHEET METAL, BODY PANELS, STRUCTURAL FRAMEWORK AND STRUCTURAL WELDS.
A.25. After market accessories or non-original equipment, components and systems not installed by the **Vehicle Manufacturer**, including, without limitation, ANTI-THEFT SYSTEMS, RADIO/SPEAKER EQUIPMENT, TELEPHONES, CRUISE CONTROL AND SUNROOF.
A.26. GPS NAVIGATION SYSTEMS AND TV/VIDEO/DVD/ENTERTAINMENT SYSTEMS.

### ARKANSAS
1. The following sentence is added at the top of the first page of this **Contract**: "Purchase of this **Contract** is not required in order to purchase or obtain financing for a motor vehicle."
2. The paragraph at the bottom of the first page of this **Contract** is replaced with the following paragraph: "THIS **SERVICE CONTRACT** IS INSURED FOR ITS LIABILITY UNDER A **SERVICE CONTRACT** REIMBURSEMENT INSURANCE POLICY ISSUED BY DEALERS ASSURANCE COMPANY. IF **WE** DO NOT SETTLE **YOUR** CLAIM(S), AS **ADMINISTRATOR** WITHIN SIXTY (60) DAYS OF **OUR** RECEIPT OF **YOUR** PROOF OF LOSS, **YOU** MAY MAKE A CLAIM DIRECTLY AGAINST: Dealers Assurance Company, PO Box 21185, Upper Arlington, OH 43221 The toll free number is 1-614-459-0367.

### CONNECTICUT
**Arbitration and Resolution of Disputes for Connecticut Residents:** If there is a dispute regarding the terms of this **Service Contract** or the coverage of any claim filed with **Us**, **We** will make a reasonable effort to resolve the dispute with **You**. If **We** are unable to resolve the dispute, **You** may file a formal written complaint with the Consumer Affairs Division of the Connecticut Insurance Department. The complaint must contain a short and plain description of the dispute, including the efforts made to resolve the dispute and the results of those efforts, the purchase price or lease price of **Your Covered Vehicle**, the cost of any disputed repairs, and a copy of this **Service Contract** document. The complaint should be mailed to State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attention: Consumer Affairs.

**Your** complaint will be reviewed by an examiner, who will attempt to mediate the dispute. If the mediation efforts are unsuccessful, **Your** complaint will be referred to the Arbitration Unit of the Connecticut Insurance Department for further resolution through arbitration. Unless either party objects to binding arbitration of the dispute by filing a written objection with the examiner within ten (10) days after notice that the matter has been referred to arbitration, the decision of the arbitrator will be binding on both parties. A more detailed description of the arbitration procedure is set forth in Sections 42-260-1 through 42-260-5 of the Connecticut Administrative Code.

**You** have a right to cancel this **Service Contract** if **You** return the **Vehicle**; the **Vehicle** is sold, lost, stolen or destroyed. If this **Service Contract** is for less than one year of coverage, this **Contract** will be extended while **Your Vehicle** is being repaired. This **Service Contract** does not include in-home service. The costs of transporting the **Vehicle** will not be paid for by the **Administrator**.

### GEORGIA
1. Unless otherwise specified on the first page of this **Contract**, **You** paid for this **Contract** in cash. If **You** financed the **Contract** price, the terms of the financing are contained in the **Service Contract** entered into between **You** and the **Selling Dealer**.
2. The section entitled "**Cancellation of this Contract** — Refunds and Charges" is replaced in its entirety with the following: "**You** will be entitled to a full refund of the **Contract** price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days after the **Contract** purchase date **You** will be entitled to a prorated refund of the **Contract** Price based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or **Vehicle** mileage specified on the first page of this **Contract** under 'Coverage Term.' **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**. The term of this **Contract** for cancellation purposes will be based on the date **You** purchased **Your Vehicle** and the **Vehicle** mileage on the date purchased. If the **Contract Price** was financed, any and all refunds will be paid to the **Lien Holder**. If the **Contract Price** was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**."
3. The section entitled "**Cancellation of this Contract** — By **Us**" is replaced with the following: "**We** reserve the right to cancel this **Contract** and will not pay for a **Covered Breakdown** if (i) **We** discover fraud or material misrepresentation in connection with **Your** obtaining this **Contract** or a claim made under this **Contract**, or (ii) the **Lien Holder** advises **Us** that **You** have defaulted in **Your** obligation to repay the amount financed by the **Lien Holder**. In general, if **We** cancel this **Contract**, **We** will mail to **You** written notice of cancellation at least thirty (30) days before the cancellation date. However, if **We** cancel this **Contract** for any reason other than non-payment, **You** will receive written notice of cancellation at least thirty (30) days before the cancellation date and **Your** refund of the unearned consideration will be 100% pro-rata with no cancellation/administrative fee or claims paid deducted from any refund. However, if **We** cancel this **Contract** because **You** have defaulted in **Your** obligation to repay the amount financed by the **Lien Holder**, **We** will mail to **You** written notice of cancellation at least ten (10) days before the cancellation date."
4. No cancellation/administrative fee or claims paid will be deducted from any cancellation.
5. Misrepresentation of the odometer reading at the time of effective coverage may result in denial of coverage under this **Service Contract**.
6. Exclusion A.6 is amended to read: "A **Breakdown** caused by or involving modifications or additions to **Your Vehicle** made by **You** or with **Your** knowledge, and those modifications or additions were performed or recommended by the **Vehicle Manufacturer**."
7. Exclusion B.6 is amended to read: "**Your Vehicle** is modified by **You** or with **Your** knowledge from the **Vehicle Manufacturer's** original specifications."
8. At the sole discretion of the **Administrator**, a replacement of any part may be made with new parts, remanufactured parts or with parts of like kind and quality at the time of the breakdown.

FORM AWA-XX-XX-05                                     P.5                                     REV 02.15.12

9. Within the "Cancellation of this Contract — By The Lien Holder" section of this Contract, the following sentence(s) is added: "The **Lien Holder** must hold a power of attorney in order to cancel this **Contract** due to **Your** default in **Your** obligations to such **Lien Holder**."

## IDAHO
1. The following sentence is added at the top of the first page of this **Contract**: "Purchase of this **Contract** is not required either to purchase or to obtain financing for a motor vehicle."
2. The paragraph at the bottom of the first page of this **Contract** is replaced with the following paragraph: "THIS **SERVICE CONTRACT** IS INSURED FOR ITS LIABILITY UNDER A **SERVICE CONTRACT** REIMBURSEMENT INSURANCE POLICY ISSUED BY **DEALERS ASSURANCE COMPANY**.   IF   WE DO NOT SETTLE **YOUR** CLAIM(S), AS **ADMINISTRATOR** WITHIN SIXTY (60) DAYS OF **OUR** RECEIPT OF **YOUR** PROOF OF LOSS, **YOU** MAY MAKE A CLAIM DIRECTLY AGAINST: Dealers Assurance Company, PO Box 21185, Upper Arlington, OH 43221. The toll free number is 1-800-282-8913.
3. Coverage afforded under this **Contract** is not guaranteed by the Idaho Insurance Guarantee Association.
4. The following language is added at the end of paragraph 2 under "**Your** Obligations:"
   "If a **Covered Part** has a **Covered Breakdown** at any time outside of Claims Department regular business hours, **You** may take one of the following steps: (1) Wait until regular business hours and then follow the normal claims procedure outlined above; or (2) Authorize and pay for any teardown or diagnostic time needed to determine whether **Your Vehicle** has a **Covered Breakdown**. If **You** reasonably determine that **You** have a **Covered Breakdown** and **You** choose to have **Your Vehicle** repaired, **You** are responsible for paying for the repair. **You** must then call the **Administrator** during the next available regular business hours so that the **Administrator** may determine whether there was a **Covered Breakdown**. If the **Administrator** determines that there was a **Covered Breakdown**, then **We** will pay **You** in accordance with the terms and conditions of this **Contract**."

## ILLINOIS
1. The **Administrator** Obligor is First Automotive Service Corporation, a New Mexico Corporation, located at 2400 Louisiana Blvd. NE, Albuquerque, NM 87110, 1-800-634-4333.
2. The section entitled "**Cancellation of this Contract — By You**" is replaced with the following: "**You** may cancel this **Contract** by contacting **Us** through the **Selling Dealer**."
3. The section entitled "**Cancellation of this Contract - Refunds and Charges**" is replaced in its entirety with the following: "**You** will be entitled to a full refund of the **Contract** Price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date, and if **You** have not filed a claim under this **Contract**. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days of the **Contract** purchase date, or if **We** or the **Lien Holder** cancels this **Contract** at any time, **You** will be entitled to a prorated refund of the **Contract** price based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or **Vehicle** mileage specified on the first page of this **Contract** under 'Coverage Term,' less a cancellation fee equal to the lesser of $50.00 or ten percent (10%) of the amount of the prorated refund." **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**.
4. Under "**Exclusions — What this Contract does not Cover**," Item A.21 is replaced with the following: "21. A gradual reduction in operating performance due to normal wear and tear."

## IOWA
1. Unless otherwise specified on the first page of this **Contract**, **You** paid for this **Contract** in cash. If **You** financed the **Contract** price, the terms of the financing are contained in the **Service Contract** entered into between **You** and the **Selling Dealer**.
2. For Iowa Residents only: If **You** have problems or questions about this **Contract**, **You** may contact the Commissioner of Insurance of the State of Iowa or the Iowa Securities Bureau at (515) 281-4441. The address is: Iowa Securities Bureau, 340 East Maple Street, Des Moines, Iowa 50319-0066.
3. The "**Cancellation of this Contract — Refunds and Charges**" section of this **Contract** is amended as follows: If this **Contract** is originally delivered to **You** by mail, **You** may cancel this **Contract** within 20 days after the date the **Contract** was mailed to **You** and receive a full refund of the **Contract** price provided no claim has been made under the **Contract**.   If this **Contract** was delivered to **You** at the time of sale, **You** may cancel this **Contract** within 10 days after the date of the **Contract** and receive a full refund of the **Contract** price provided no claim has been made under the **Contract**. If a full refund is due to **You** under this **Contract**, a 10% penalty per month will be added to the refund if it is not made within 30 days of return of the **Contract** to **Us**.
4. The third paragraph under "**Our Obligations—Covered Breakdowns (Deductible Applies)**" is replaced in its entirety by the following: "Replacement parts can be of like kind and quality and may include new, remanufactured or used parts as determined by the **Administrator**, except that: (i) used parts may only be used with **Your** prior written authorization to do so, and (ii) rebuilt parts may only be used if the parts are rebuilt according to national standards recognized by the insurance division (Commissioner of Insurance of the State of Iowa/Iowa Securities Bureau)."

## MASSACHUSETTS
NOTICE TO CUSTOMER: PURCHASE OF THIS **CONTRACT** IS NOT REQUIRED IN ORDER TO REGISTER OR FINANCE A **VEHICLE**. THE BENEFITS PROVIDED MAY DUPLICATE EXPRESS MANUFACTURER'S OR SELLER'S WARRANTIES THAT COME AUTOMATICALLY WITH EVERY SALE. THE SELLER OF THIS COVERAGE IS REQUIRED TO INFORM **YOU** OF ANY WARRANTIES AVAILABLE TO **YOU** WITHOUT THIS **CONTRACT**.
Chapter 90, Section N1/4 of Massachusetts General Laws requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:
• Used vehicles with less than 40,000 miles at the time of sale are covered for 90 days or 3,750 miles, whichever comes first.
• Used vehicles with 40,000 miles or more, but less than 80,000 miles, at the time of sale are covered for 60 days or 2,500 miles, whichever comes first.
• Used vehicles with 80,000 miles or more, but less than 125,000 miles, at the time of sale are covered for 30 days or 1,250 miles, whichever comes first.
The **Vehicle You** have purchased may be covered by this law. If so, the following is added to this **Contract**: In addition to the dealer warranty required by this law, **You** have elected to purchase this **Contract**, which may provide **You** with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. **You** have been charged separately only for this **Contract**. The required dealer warranty is provided free of charge. Furthermore, the definition, coverage, and exclusions stated in this **Contract** apply only to this **Contract** and are not the terms of the required dealer warranty.

## MINNESOTA
1. Paragraph 1 under "**Your Obligations**" is replaced with the following: "In order for this **Contract** to remain in force, **You** must:
   • Change the oil and oil filter in the **Vehicle** at least every six (6) months or 5,000 miles, whichever comes first;
   • Replace the timing belt in the **Vehicle** at least every 90,000 miles;
   • Keep and make available to the **Administrator** upon request, verifiable signed receipts that show that the above required maintenance and servicing was timely performed."
2. Under "**Exclusions — What this Contract does not Cover**":
   a.   Item A.1 is replaced with the following: "1. A **Breakdown** caused by lack of customary or proper maintenance."
   b.   Item A.5 is replaced with the following: "5. Fraud, material misrepresentation or material omission made by **You** in pursuing a claim under this **Contract**."
   c.   Item A.12, A.22 and A.27 are deleted in their entirety.
   d.   Item A.17 is replaced with the following: "17. Any cost or other benefit that the **Vehicle** manufacturer will pay as a result of a public recall or factory service bulletin.
   e.   Item B.5 is deleted.
3. There is no exclusion for pre-existing conditions, normal wear and tear or repairs caused to a covered part by a non-covered part or by "consequential" damage from a non-covered part.   Exclusion of coverage for odometer tampering in only applies only if it occurs and **You** fail to repair while the **Vehicle** is owned by **You**.   There is no exclusion for repairs or replacements of motor **Vehicle** components which were not operating properly in accordance with manufacturer's specifications at the time of sale of this **Service Contract** or if the manufacturer has "branded" the title (cancelled the factory warranty).
4. As required by Section 325F. 662 of the Minnesota Statutes, the **Selling Dealer** is providing to **You** the coverage listed below at no charge if the **Vehicle** has less than 75,000 miles at the time **You** purchased the **Vehicle** or if the purchase price of the **Vehicle** is $3,000 or more (including the trade-in value of any **Vehicle** traded in by **You**, but excluding tax, license fees, registration fees, and finance charges) or if the **Vehicle** does not fall within any of the other exclusions listed under Subdivision 3 of Section 325F.662 of the Minnesota Statutes. The term of such coverage is based upon the mileage of the **Vehicle** at the time of purchase and is as follows:
   a.   Used **Vehicles** with less than 36,000 miles are covered for 60 days or 2,500 miles, whichever comes first.
   b.   Used **Vehicles** with 36,000 miles or more, but less than 75,000 miles, are covered for 30 days or 1,000 miles, whichever comes first.
The following parts are covered by the **Selling Dealer's** limited warranty:
1.   Engine: All lubricated parts, intake manifolds, engine block, cylinder head, rotary engine housings;
2.   Transmission: Automatic transmission case, internal parts, and the torque converter; or the manual transmission case and the internal parts;
3.   Drive Axle: Axle housings and internal parts, axle shafts, drive shafts output shafts, and universal joints; the secondary drive axle on vehicles other than passenger vans is excluded for coverage;

4. Brakes: Master cylinder, vacuum assist booster, wheel cylinders, hydraulic lines and fittings, and disc brakes calipers;
5. Steering: Steering gear housing and all internal parts, power steering pump, valve body, and piston;
6. Water pump;
7. Externally-mounted mechanical fuel pump.

In addition, the following parts are covered if the **Vehicle** has less than 36,000 miles: Steering rack, radiator, alternator, generator, and starter. The above coverage is excluded from this **Contract** during the applicable warranty period unless the **Selling Dealer** is unable to meet its obligations. **Your** rights and obligations regarding this coverage are more fully explained in the used **Vehicle Service Contract** document provided to **You** by the **Selling Dealer**.

### MISSISSIPPI

1. Unless otherwise specified on the first page of this **Contract**, **You** paid for this **Contract** in cash. If **You** financed the **Contract Price**, the terms of financing are contained in the **Service Contract** entered into between **You** and the **Selling Dealer**.
2. The following language is added at the end of paragraph 2 under "**Your Obligations**": "If a **Covered Part** has a **Covered Breakdown** at any time outside of Claims Department regular business hours, **You** may take one of the following steps:
   - Wait until regular business hours and then follow the normal claims procedure outlined above; or
   - Authorize and pay for any teardown or diagnostic time needed to determine whether **Your Vehicle** has a **Covered Breakdown**. If **You** reasonably determine that **You** have a **Covered Breakdown** and **You** choose to have **Your Vehicle** repaired, **You** are responsible for paying for the repair. **You** must then call the **Administrator** during the next available regular business hours so that the **Administrator** may determine whether there was a **Covered Breakdown**. If the **Administrator** determines that there was a **Covered Breakdown**, then **We** will pay **You** in accordance with the terms and conditions of this **Contract**."

### MISSOURI

The cancellation section of this **Contract** is amended to include the following: If this **Contract** is originally delivered to **You** by mail, **You** may cancel this **Contract** within twenty (20) days after the date the **Contract** was mailed to **You** or within ten (10) days if the **Contract** is delivered at the time of sale and receive a full refund of the **Contract** price provided no claim has been made under the **Contract**. If a full refund is due to **You** under this **Contract**, a ten (10%) penalty per month will be added to the refund if it is not made within thirty (30) days of return of the **Contract** to **Us**. A written notice will be mailed to the **Contract Holder** within fifteen days (15) of the date of cancellation by the **Contract Holder**. This **Contract** is non-renewable.   The "**What To Do If You Have A Breakdown**" provision is amended by adding the following: In the event of an emergency situation essential to public health, safety or welfare and the **Administrator** cannot be reached, proceed with repairs. But, payment will be made in accordance with the **Contract** and as soon as reasonably possible, **You** should report the repairs to the **Administrator**.

### MONTANA

The section entitled "Arbitration" is deleted. If **We** cancel this **Contract**, **We** will mail written notice to **You** within at least five (5) days prior to the cancellation.  Prior notice is not required for cancellation of nonpayment of the provider fee, a material misrepresentation by **You** to **Us**, or substantial breach of duties by **You** relating to the covered product or its use.

### NEVADA

1. The following language is added to the section entitled "**Cancellation of this Contract**— By **Us**":
   "Notwithstanding the foregoing, if this **Contract** has been in effect for at least seventy (70) days, **We** will not be entitled to cancel it before the expiration of the term of this **Contract** or for one (1) year after the **Sale Date** of this **Contract**, whichever occurs first, except on any of the following grounds:
   (a) Failure by **You** to pay an amount when due; (b) Conviction of **You** of a crime that results in an increase in the service required under this **Contract**; (c) Discovery of fraud or material misrepresentation by **You** in obtaining this **Contract**, or in presenting a claim for service under this **Contract**; (d) Discovery of: (1) An act or omission by **You**; or (2) A violation by **You** of any condition of this **Contract**, which occurred after the **Sale Date** of this **Contract** and which substantially and materially increases the service required under this **Contract**; or (e) A material change in the nature or extent of the required service or repair that occurs after the **Sale Date** of this **Contract** and that causes the required service or repair to be substantially and materially increased beyond that contemplated at the time that this **Contract** was issued or sold. If **We** cancel this **Contract**, **We** will mail to **You** written notice of cancellation (stating the date of and reason for the cancellation) at least fifteen (15) days before the cancellation date."
2. The paragraph under "**Cancellation of this Contract**—Refunds and Charges" is replaced in its entirety with the following:
   "**You** will be entitled to a full refund of the **Contract** Price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date, if **You** have not filed a claim under this **Contract**. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days after the **Contract Sale Date**, or if **We** or the Lien Holder cancels this **Contract** at any time, **You** will be entitled to a prorated refund of the **Contract** price (less a $50.00 cancellation fee, unless **We** cancel this **Contract**, in which case no fee will be deducted) based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or mileage specified on the first page of this **Contract** under 'Coverage Term.' **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**. The term of this **Contract** for cancellation purposes will be based on the date **You** purchased **Your Contract** and the **Vehicle** mileage on the date purchased. If the **Contract** price was financed, any and all refunds will be paid to the **Lien Holder**. If the **Contract** price was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**. In that case, **We** will provide **You** with a refund within forty-five (45) days after the **Selling Dealer** receives **Your** written notice of cancellation, and if **We** fail to do so within that time, **We** will pay **You** a penalty of 10 percent of the **Contract** price for each thirty (30) day period or portion of thereof that the refund and any accrued penalties remain unpaid."
3. The following language is added to the end of the last sentence of paragraph 1 under "**Our Obligations**":
   ", and may include parts that are not made for or by the original manufacturer of the **Vehicle**."
   This **Contract** is not renewable.
4. The following language is deleted from "EXCLUSIONS — WHAT THIS CONTRACT DOES NOT COVER": "B. In addition, this Contract provides no benefits or coverage and We have no obligation under this Contract if: 5. You are using or have used Your Vehicle in a manner that is not recommended by the Vehicle Manufacturer.; 6. Your Vehicle is modified from the Vehicle Manufacturer's original specifications."
5. The following language is added to this **Contract** "This **Contract** will not cover any unauthorized or non-manufacturer-recommended modifications to **Your Vehicle**, or any damages arising from such unauthorized or non-manufacturer-recommended modifications. However, if **Your Vehicle** is modified in a manner that is not recommended by the manufacturer of **Your Vehicle**, the **Obligor** will not automatically suspend all coverage. Rather, this **Contract** will continue to provide any applicable coverage that is not related to the unauthorized or non-manufacturer-recommended modification or any damages arising therefrom, unless such coverage is otherwise excluded by the terms of this **Contract**."

### NEW YORK

A ten (10%) percent penalty per month shall be added to a refund that is not made within thirty days (30) of return of the **Contract** to the Administrator. **We** will mail a written notice with the reason for cancellation to **You** at least fifteen (15) days prior to the cancellation by **Us**.  Written notice is not required if the reason for cancellation is nonpayment of the cost of this Contract, a material misrepresentation, or a substantial breach of duties by **You** relating to the covered property or its use.

### NORTH CAROLINA

1. There shall be added to the first page of this **Contract** in the signature box just above the signature line the following:  "THE PURCHASE OF THIS CONTRACT IS NOT REQUIRED EITHER TO PURCHASE OR TO OBTAIN FINANCING FOR A MOTOR VEHICLE."
2. The section entitled "**Cancellation of this Contract** — Refunds and Charges" is replaced in its entirety with the following:
   "**You** will be entitled to a full refund of the **Contract** price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date, and if **You** have not filed a claim under this **Contract**. If **You** provide a written notice of cancellation to the **Selling Dealer** after the thirty (30) days after the **Contract** purchase date, or if **We** or the Lien Holder cancels this **Contract** at any time, **You** will be entitled to a prorated refund of the **Contract** price (less a cancellation fee equal to the lesser of $50.00 or ten percent (10%) of the amount of the prorated refund) based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or **Vehicle** mileage specified on the first page of this **Contract** under 'Coverage Term.' **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**. The term of this **Contract** for cancellation purposes will be based on the date **You** purchased **Your Vehicle** and the **Vehicle** mileage on the date purchased. If the **Contract** price was financed, any and all refunds will be paid to the Lien Holder. If the **Contract** price was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**."

### OKLAHOMA

1. The section entitled "**Cancellation of this Contract** — Refunds and Charges" is replaced in its entirety with the following:

"**You** will be entitled to a full refund of the **Contract** price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days after the **Contract** purchase date, **Your** refund will be based upon ninety percent (90%) of the unearned pro rata premium. If the **Contract** price was financed, any and all refunds will be paid to the **Lien Holder**. If the **Contract Price** was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**."

2. In the event the **Contract** is canceled by **Us**, refund will be based upon one hundred percent (100%) of unearned pro rata premium.

3. The section entitled "Arbitration" is deleted.

4. The following disclosure statement is added to the first page of this **Contract**: "THIS SERVICE CONTRACT IS NOT ISSUED BY THE MANUFACTURER OR WHOLESALE COMPANY MARKETING THE PRODUCT. THIS CONTRACT WILL NOT BE HONORED BY SUCH MANUFACTURER OR WHOLESALE COMPANY."

### OREGON
The following language is added at the end of paragraph 2 under "**Your Obligations**:
   c.   "If a **Covered Part** has a **Covered Breakdown** at any time outside of Claims Department regular business hours, **You** may take one of the following steps:
• Wait until regular business hours and then follow the normal claims procedure outlined above; or
• Authorize and pay for any teardown or diagnostic time needed to determine whether **Your Vehicle** has a **Covered Breakdown**. If **You** reasonably determine that **You** have a **Covered Breakdown** and **You** choose to have **Your Vehicle** repaired, **You** are responsible for paying for the repair. **You** must then call the **Administrator** during the next available regular business hours so that the **Administrator** may determine whether there was a **Covered Breakdown**. If the **Administrator** determines that there was a **Covered Breakdown**, then **We** will pay **You** in accordance with the terms and conditions of this **Contract**."

### SOUTH CAROLINA
1. Unless otherwise specified on the first page of this **Contract**, **You** paid for this **Contract** in cash. If **You** financed the **Contract Price**, the terms of financing are contained in the **Installment Contract** entered into between **You** and the **Selling Dealer**.

2. Any unresolved complaints or questions about this **Contract** may be addressed to:  South Carolina Department of Insurance, P.O. Box 100105, Columbia, SC 29202-3105, (803) 737-6134

3. The section entitled "**Cancellation of this Contract**—Refunds and Charges" is replaced in its entirety with the following:  "**You** will be entitled to a full refund of the **Contract** price if **You** provide a written notice of cancellation to the **Selling Dealer** within the first thirty (30) days after the **Contract** purchase date, and if **You** have not filed a claim under this **Contract**. In that case, **We** will provide **You** with a refund within 45 days after the **Selling Dealer** receives **Your** written notice of cancellation, and if we fail to do so within that time, **We** will pay **You** a penalty of 10 percent of the **Contract** price for each month that the refund remains unpaid. If **You** provide a written notice of cancellation to the **Selling Dealer** after the first thirty (30) days after the **Contract** purchase date, or if **We** or the **Lien Holder** cancels this **Contract** at any time, **You** will be entitled to a prorated refund of the **Contract Price** based on the greater of the number of days the **Contract** was in force or the miles driven compared to the total time or **Vehicle** mileage specified on the first page of this **Contract** under 'Coverage Term.' **Your** cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the **Vehicle**. The term of this **Contract** for cancellation purposes will be based on the date **You** purchased **Your Contract** and the **Vehicle** mileage on the date purchased. If the **Contract Price** was financed, any and all refunds will be paid to the **Lien Holder**. If the **Contract** price was not financed, any and all refunds will be paid to **You** by the **Selling Dealer**."

4. The following paragraph is added to the section entitled "**Cancellation of this Contract**— By **Us**":
"If **We** cancel this **Contract**, **We** will mail a written notice to **You** at **Your** last known address contained in **Our** records at least fifteen (15) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. **We** will not send **You** advance notice if the reason for cancellation is nonpayment of the **Contract** price, a material misrepresentation by **You** to **Us**, or a substantial breach of duties by **You** relating to the **Vehicle** or its use."

### TEXAS
1. Unless otherwise specified on the first page of this **Contract**, **You** paid for this **Contract** in cash. If **You** financed the **Contract Price**, the terms of financing are contained in the **Contract** entered into between **You** and the **Selling Dealer**.

2. The following paragraph is added to the section entitled "**Cancellation of this Contract** — By **Us**":  "If **We** cancel this **Contract**, **We** will mail a written notice to **You** at **Your** last known address contained in **Our** records at least six (6) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. **We** will not send **You** advance notice if the reason for cancellation is nonpayment of the **Contract Price**, a material misrepresentation by **You** to **Us**, or a substantial breach of duties by **You** relating to the **Vehicle** or its use."

3. The following sentence is inserted after the first sentence under "**Cancellation of this Contract** — Refunds and Charges": "In that case, **We** will provide **You** with a refund within forty-five (45) days after the **Selling Dealer** receives **Your** written notice of cancellation, and if **We** fail to do so within that time, **We** will pay **You** a penalty of ten (10%) percent of the **Contract Price** for each month that the refund remains unpaid." Pursuant to Section 1304.158, **You** may request reimbursement directly from the insurer if a refund or credit is not paid before the forty-sixth (46th) day after the date on which the **Contract** is returned to the **Administrator**.

4. Any unresolved complaints concerning **Us** or questions concerning the regulation of service contract providers may be addressed to the Texas Department of Licensing and Regulation at the following address and telephone numbers: Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, (800) 803-9202/(512) 463-6599

### UTAH
1. Coverage afforded under this **Contract** is not guaranteed by the Property and Casualty Guaranty Association.

2. The **Contract** purchase price is payable, in full, at the time of purchase.

3. The following language is added at the end of paragraph 2 under "**Your Obligations**:": If a **Covered Part** has a **Covered Breakdown** at any time outside of Claims Department regular business hours, **You** should report the repairs to the **Administrator** as soon as reasonably possible.

4. The following sentence is added to the section entitled "**Cancellation of this Contract** — By **Us**": **We** may only cancel this **Contract**, for material misrepresentation or substantial breaches of contractual duties, conditions, or warranties, **We** will mail to **You** written notice of cancellation at least thirty (30) days before the cancellation date. However, if **We** cancel this **Contract** for nonpayment of the amount financed by the **Lien holder**, **We** will mail to **You** written notice of cancellation at least ten (10) days before the cancellation date.

5. Under the emergency repairs section of this **Contract**, "On the next business day, **You** should report the repairs to the **Administrator**" is amended as follows, "As soon as reasonably possible, **You** should report the repairs to the **Administrator**."

6. The toll-free number for Dealers Assurance Company is 1-800-282-8913.

7. This Service Contract is subject to limited regulation by the Utah Insurance Department.  To file a complaint, contact the Utah Insurance Department.

### VIRGINIA
The definition of "**We**," "**Us**" and "**Our**" under "**Definitions**" is replaced with the following: "**We**," "**Us**" and "**Our**" refers to Superior Protection Plan.

### WISCONSIN
1. THIS SERVICE CONTRACT IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE COMMISSIONER OF INSURANCE.

2. The following sentences are added to the first bullet point in item 2 under "**Your Obligations**" and to item A.28 under "**Exclusions — What this Contract does not Cover**":
"However, the failure by **You** to obtain an authorization number from the **Administrator** prior to beginning a repair will not invalidate or reduce a claim unless **We** are prejudiced by **Your** failure to obtain an authorization number. In other words, **We** will not deny a claim solely because **You** or **Your** repair facility failed to obtain an authorization number before beginning a repair."

3. The first sentence under "**Other Important Contract Provisions/Limitations — Our Rights Against Others**" is replaced with the following:
"If **You** receive any benefits under this **Contract**, **We** will be entitled to all **Your** rights of recovery against any manufacturer, repairer or other party who may be responsible to **You** for the costs covered by this **Contract** or for any other payment made by **Us**, but only after **You** have been made whole for **Your** loss (i.e., **You** have been fully compensated for **Your** damages)."

4. Once authorization is obtained, and the repair is completed, all repair invoices and documentation must be submitted to the **Administrator** as soon reasonably possible.

5. **You** may reject and return this **Contract** within fifteen (15) calendar days of the delivery of this **Contract** for a full refund, less actual costs and/or charges needed to issue and service this **Contract**.

6. Within the "**Your Obligations**" section, the following sentence(s) is amended: "To make a claim, call the **Administrator** toll-free at 1-866-410-6748. Claims Department hours are Monday through Friday, 7 a.m. to 7 p.m., Saturday 8 a.m. to 2 p.m., Central Time. **CLAIMS MUST BE SUBMITTED AS SOON AS REASONABLE POSSIBLE AND WITHIN ONE (1) YEAR FROM AUTHORIZATION TO QUALIFY FOR REIMBURSEMENT.**"

7. The section entitled "Your Obligations — Emergency Repairs" is amended with the following: "If emergency repairs covered by this Contract are required outside the Selling Dealer's or Administrator's business hours, You should deliver Your Vehicle to a licensed repair facility and have the necessary repairs performed at a reasonable and customary charge. As soon as reasonably possible and within one (1) year, You should report the repairs to the Administrator. Failure by You to give notice or proof within the time required does not invalidate or reduce the claim unless You are prejudiced by the failure to give notice. To report an emergency repair and obtain a reimbursement, please call the claims number below for instructions. Emergency repairs are only those repairs, which, if not performed, would render Your Vehicle inoperable or unsafe to drive and impair its future operation."

**WYOMING**

1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract price, the terms of financing are contained in the Service Contract entered into between You and the Selling Dealer.

2. The following paragraph is added to the section entitled "Cancellation of this Contract — By Us".: "If We cancel this Contract, We will mail a written notice to You at Your last known address contained in Our records at least ten (10) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. We will not send You advance notice if the reason for cancellation is nonpayment of the Contract Price, a material misrepresentation by You to Us, or a substantial breach of duties by You relating to the Vehicle or its use."

3. If there is a Lien Holder, the refund less a cancellation fee will be paid to You and the Lien Holder.

4. Arbitration will take place in accordance with the Wyoming Arbitration Act.

5. The following paragraph is added to the section entitled "Cancellation of this Contract— By the Lien Holder": ""You understand and acknowledge that the Lien Holder (if any) has the right to cancel this Contract if the Vehicle is repossessed or destroyed or You are otherwise in default of Your obligations to repay the amount financed by the Lien Holder."

6. The following paragraph is added to the section entitled "Cancellation of this Contract": Service contracts shall require the provider to permit the original service contract holder to return the service contract within twenty (20) days of the date the service contract was mailed to the service contract holder or within ten (10) days of delivery if the service contract is delivered to the service contract holder at the time of sale or within a longer time period permitted under the service contract. Upon return of the service contract to the provider within the applicable time period, if no claims have been made under the service contract prior to its return to the provider, the service contract is void and the provider shall refund the service contract holder, or credit the account of the service contract holder, with the full purchase price of the service contract. The right to void the service contract provided in this subsection is not transferable and shall apply only to the original service contract purchaser, and only if no claim has been made prior to its return to the provider. A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the service contract to the provider. A cancellation fee is not allowed if the service contract is cancelled during the "free look" period.

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 6 Pages

# EXHIBIT NO. 4

# CRAIN BUICK REPAIRS
## January 11, 2017

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**



www.crainteam.com

**Buick GMC**

710 South Amity Rd. · Conway, Arkansas 72032
(501) 329-6825 Business · (501) 329-9127 Fax

 

PNCS121128

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR HEATH | TAG NO. 90610 | 4007 | INVOICE DATE 01/18/17 | INVOICE NO. PNCS121128 |
|---|---|---|---|---|---|

| | LABOR RATE | LICENSE NO. | MILEAGE 125,465 | COLOR / | STOCK NO. |
|---|---|---|---|---|---|

CHRIS MILLER
11 BUDCHUCK LN
CONWAY, AR 72032

| YEAR/MAKE/MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | DELIVERY DATE | DELIVERY MILES |
|---|---|---|---|

| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|---|

| F.T.E. NO. | P.O. NO. | R.O. DATE 01/11/17 |
|---|---|---|

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 125465 |
|---|---|---|---|

**LABOR & PARTS**

J# 1 10CVZ                    TECH(S):14990                    495.00
C/S CHECK ENGINE LIGHT ON. OIL PRESSURE DROPPING AND SAYS TO
TURN OFF VEHICLE. VEHICLE MAKING A GRINDING /KNOCKING NOISE.
OIL SENDING UNIT HAS BE REPLACED TWICE. EXT WARRANTY
OIL RELIEF VALVE STICKING OPEN RESULTING IN LOW PRESSURE
TO OIL PRESSURE SENSOR SETTING P0521.
REPLACED OIL RELIEF VALVE IN OIL PAN & PEFORMED OIL CHANGE
(UPON INSPECTION FOUND OIL PRESSURE SENSOR CONNECTOR
DAMAGED - LOCKTAB BROKEN OFF) (STAYING ON AT THIS TIME)
RETESTED - OIL PRESSURE NOW WITH-IN FACTORY SPEC & PASSING
SPECIFIC DTC TEST.

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| JOB # 1 | 1 | 12608835 | VALVE 1.609 | 7.98 | 7.98 |
| JOB # 1 | 1 | 12612350 | GASKET 1.429 | 42.86 | 42.86 |
| JOB # 1 | 5 | 88865639 | OIL 8.800 | 8.00 | 40.00 |

JOB # 1 TOTAL PARTS        90.84

JOB # 1 TOTAL LABOR & PARTS        585.84

J# 2 10CVZ99P    INSPECTION REPORT        TECH(S):14990        0.00
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|

JOB # 2 TOTAL PARTS        0.00

JOB # 2 TOTAL LABOR & PARTS        0.00

J# 3+56CVZLEAK    YELLOW - FLUID LEAK        TECH(S):14990        0.00
Added Operation  (CHADW @ 01/17/2017 17:00)
FOUND DURING VEHICLE INSPECTION
FLUID LEAK WILL REQUIRE ATTENTION SOON
ALL TRANS COOLER LINES, BOTH FRONT AXLE SEALS LEAKING
CUSTOMER WAS INFORMED OF CONCERN

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|

JOB # 3 TOTAL PARTS        0.00

JOB # 3 TOTAL LABOR & PARTS        0.00

J# 4+56CVZSUSP    YELLOW - SUSPENSION        TECH(S):14990        0.00
Added Operation  (CHADW @ 01/17/2017 17:00)
FOUND DURING VEHICLE INSPECTION
SUSPENSION CONCERN WILL REQUIRE ATTENTION SOON
BOTH FRONT STRUTS & BOTH REAR SHOCKS WEAK/LEAKING
CUSTOMER WAS INFORMED OF CONCERN

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE |
|---|---|---|---|---|

JOB # 4 TOTAL PARTS        0.00

JOB # 4 TOTAL LABOR & PARTS        0.00

**WARRANTY DISCLAIMER**

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

**Shop Supplies and Environmental Disposal Charges**

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE. UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAS BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE

The Reynolds and Reynolds Company ERAINTONE
SF610091 Q (09/16)



www.crainteam.com

CRAIN
**Buick GMC**

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

PNCS121128

CELL: 501-428-0619

| CUSTOMER NO. | ADVISOR | | TAG NO. | INVOICE DATE | INVOICE NO. |
|---|---|---|---|---|---|
| 1353499 | HEATH | 90610 | 4007 | 01/18/17 | PNCS121128 |

| | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|
| CHRIS MILLER | | | 125,465 | / | |
| 11 BUDCHUCK LN | YEAR / MAKE / MODEL | | | DELIVERY DATE | DELIVERY MILES |
| CONWAY, AR 72032 | 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | | |
| | VEHICLE I.D. NO. | | | SELLING DEALER NO. | PRODUCTION DATE |
| | 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | | |
| | F.T.E. NO. | | P.O. NO. | R.O. DATE | |
| | | | | 01/11/17 | |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | | MO: 125465 |
|---|---|---|---|---|
| 501-428-0619 | | | | |

| LABOR & PARTS | | | |
|---|---|---|---|
| J# 5+56CVZBELT    YELLOW - BELT | TECH(S):14990 | | 0.00 |
| Added Operation  (CHADW @ 01/17/2017 17:00) | | | |
| FOUND DURING VEHICLE INSPECTION | | | |
| BELT(S) WILL REQUIRE ATTENTION SOON | | | |
| BOTH BELTS WORE | | | |
| CUSTOMER WAS INFORMED OF CONCERN | | | |

| PARTS----QTY---FP-NUMBER----------- | DESCRIPTION----------------UNIT PRICE- | |
|---|---|---|
| | JOB # 5 TOTAL PARTS | 0.00 |
| | JOB # 5 TOTAL LABOR & PARTS | 0.00 |

| J# 6+56CVZOTHER    YELLOW - OTHER | TECH(S):14990 | | 0.00 |
|---|---|---|---|
| Added Operation  (CHADW @ 01/17/2017 17:10) | | | |
| FOUND DURING VEHICLE INSPECTION | | | |
| CONCERN WILL REQUIRE ATTENTION SOON | | | |
| TIRE LAMP ON | | | |
| CUSTOMER WAS INFORMED OF CONCERN | | | |

| PARTS----QTY---FP-NUMBER----------- | DESCRIPTION----------------UNIT PRICE- | |
|---|---|---|
| | JOB # 6 TOTAL PARTS | 0.00 |
| | JOB # 6 TOTAL LABOR & PARTS | 0.00 |

| J# 7+20CVZ    *A/C & HEATING | TECH(S):14990 | | 451.00 |
|---|---|---|---|
| Added Operation  (BROWNN @ 01/18/2017 07:39) | | | |
| C/S VEHICLE IS MAKING LOUD GRINDING NOISE COMING FROM UNDER | | | |
| THE HOOD | | | |
| BEARING IN A/C COMPRESSOR BAD NOISY | | | |
| REPLACED A/C COMPRESSOR, EVACUATED & | | | |
| RECHARGED A/C SYSTEM. (NO FURTHER ABNORMAL NOISE HEARD) | | | |
| NO WARRANTY ON COMPRESSOR FROM WHERE IT WAS BOUGHT BECAUSE | | | |
| THE DRYER WAS NOT REPLACED | | | |

| PARTS-----QTY---FP-NUMBER------------- | DESCRIPTION----------------UNIT PRICE- | | |
|---|---|---|---|
| JOB # 7    1    78377 | COMPRESSO | 311.25 | 311.25 |
| | JOB # 7 TOTAL PARTS | 311.25 | 311.25 |
| | JOB # 7 TOTAL LABOR & PARTS | | 762.25 |

| MISC----------CODE-----DESCRIPTION----------- | -----CONTROL NO.----- | |
|---|---|---|
| JOB # A    *SS   ENVIRONMENTAL CHARGE | | 94.60 |
| JOB # 1    EC   CREDIT | | -94.60 |
| JOB # 1    *WO   EXT WARRANTY PAYABLE | 121128 | -485.84 |
| JOB # 7    *WO   EXT WARRANTY PAYABLE | 121128 | -762.25 |
| | TOTAL - MISC | -1248.09 |

COMMENTS----------------------------------------
DROP OFF 501-428-0619 EXT WARRANTY
SUPERIOR PROTECTION PLAN
1-866-410-6748
AUTH AMOUNT $485.84
AUTH NUMBER 80271288
DEDUCTIBLE $100.00

### WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

### Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE; UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FROM (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  CRAINTHIVE
SF619091 Q (09/16)



www.crainteam.com

**CRAIN**
*Buick GMC*

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

PNCS121128

CELL: 501-428-0619

| CUSTOMER NO. | | ADVISOR | | TAG NO. | | INVOICE DATE | | INVOICE NO. |
|---|---|---|---|---|---|---|---|---|
| 1353499 | | HEATH | 90610 | 4007 | | 01/18/17 | | PNCS121128 |

| | LABOR RATE | LICENSE NO. | MILEAGE | COLOR | STOCK NO. |
|---|---|---|---|---|---|
| CHRIS MILLER | | | 125,465 | / | |
| 11 BUDCHUCK LN | YEAR / MAKE / MODEL | | | DELIVERY DATE | DELIVERY MILES |
| CONWAY, AR 72032 | 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | | |
| | VEHICLE I.D. NO. | | | SELLING DEALER NO. | PRODUCTION DATE |
| | 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | | |
| | F.T.E. NO | | P.O. NO. | R.O. DATE | |
| | | | | 01/11/17 | |

| RESIDENCE PHONE | BUSINESS PHONE | COMMENTS | |
|---|---|---|---|
| 501-428-0619 | | | MO: 125465 |

COMMENTS---------------------------------------------

AUTH AMOUNT $762.25
AUTH NUMBER 3269965
FAX ATTENTION CASHIER
1-972-813-0717

RECOMMENDATIONS----------------------------------
TECH RECOMMENDATION ON RO#121128
FRONT STRUTS LEAKING
REAR SHOCKS LEAKING
AXLE SEAL LEAKING
CALL HEATH FOR APPOINTMENT 501-932-0654

TOTALS----------------------------------------------

THANK YOU FOR ALLOWING CRAIN BUICK, GMC
TO SERVICE YOUR VEHICLE. WE STRIVE TO GAIN YOUR COMPLETE
SATISFACTION WITH EACH VISIT. YOU MAY RECEIVE A CUSTOMER
SATISFACTION SURVEY FROM GENERAL MOTORS ASKING YOU TO
RATE YOUR SERVICE EXPERIENCE. IF, FOR ANY REASON, YOU
CANNOT CHECK "COMPLETELY SATISFIED," PLEASE CONTACT YOUR
SERVICE ADVISOR IMMEDIATELY.

| | |
|---|---|
| TOTAL LABOR.... | 946.00 |
| TOTAL PARTS.... | 402.09 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 94.60 |
| TOTAL MISC DISC | -1342.69 |
| TOTAL TAX...... | 0.00 |
| **TOTAL INVOICE $** | **100.00** |

X _____
CUSTOMER SIGNATURE
*************************   D U P L I C A T E   I N V O I C E   *************************

### WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

### Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED ,OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company CRAINTRONIC
SF010091 O (09/10)





**CRAIN**
**Buick GMC**

710 South Amity Rd. · Conway, Arkansas 72032
(501) 329-6825 Business · (501) 329-9127 Fax

BUICK   GMC

www.crainteam.com

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | | ADVISOR HEATH | 90610 | TAG NO. 4007 | INVOICE DATE 01/18/17 | PNCS121128 |
|---|---|---|---|---|---|---|
| | | LABOR RATE | LICENSE NO. | MILEAGE 125,465 | COLOR / | STOCK NO. |
| CHRIS MILLER 11 BUD CHUCK LN CONWAY, AR 72032-9788 | | YEAR/MAKE/MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | DELIVERY DATE | DELIVERY MILES |
| | | VEHICLE I.D.NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | | R.E.E. NO. | | P.O. NO. | R.O. DATE 01/11/17 | |
| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | | | | MO: 125465 |

LABOR & PARTS

J# 1 10CVZ              DRIVEABILITY                 TECH(S):14990               495.00
C/S CHECK ENGINE LIGHT ON. OIL PRESSURE DROPPING AND SAYS TO
TURN OFF VEHICLE. VEHICLE MAKING A GRINDING /KNOCKING NOISE.
OIL SENDING UNIT HAS BE REPLACED TWICE. EXT WARRANTY
OIL RELIEF VALVE STICKING OPEN RESULTING IN LOW PRESSURE
TO OIL PRESSURE SENSOR SETTING P0521.
REPLACED OIL RELIEF VALVE IN OIL PAN & PEFORMED OIL CHANGE
(UPON INSPECTION FOUND OIL PRESSURE SENSOR CONNECTOR
DAMAGED - LOCKTAB BROKEN OFF) (STAYING ON AT THIS TIME)
RETESTED - OIL PRESSURE NOW WITH-IN FACTORY SPEC & PASSING
SPECIFIC DTC TEST.

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| JOB # 1 | 1 | 12608835 | VALVE 1.609 | 7.98 | 7.98 |
| JOB # 1 | 1 | 12612350 | GASKET 1.429 | 42.86 | 42.86 |
| JOB # 1 | 5 | 88865639 | OIL 8.800 | 8.00 | 40.00 |
| | | | JOB # 1 TOTAL PARTS | | 90.84 |

                                JOB # 1 TOTAL LABOR & PARTS          585.84

J# 2 10CVZ99P          INSPECTION REPORT            TECH(S):14990               0.00
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

| PARTS | QTY | FP-NUMBER | DESCRIPTION | |
|---|---|---|---|---|
| | | | JOB # 2 TOTAL PARTS | 0.00 |

                                JOB # 2 TOTAL LABOR & PARTS          0.00

J# 3+56CVZLEAK        YELLOW - FLUID LEAK          TECH(S):14990               0.00
Added Operation  (CHADW @ 01/17/2017 17:00)
FOUND DURING VEHICLE INSPECTION
FLUID LEAK WILL REQUIRE ATTENTION SOON
ALL TRANS COOLER LINES, BOTH FRONT AXLE SEALS LEAKING
CUSTOMER WAS INFORMED OF CONCERN

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| | | | JOB # 3 TOTAL PARTS | | 0.00 |

                                JOB # 3 TOTAL LABOR & PARTS          0.00

J# 4+56CVZSUSP        YELLOW - SUSPENSION          TECH(S):14990               0.00
Added Operation  (CHADW @ 01/17/2017 17:00)
FOUND DURING VEHICLE INSPECTION
SUSPENSION CONCERN WILL REQUIRE ATTENTION SOON
BOTH FRONT STRUTS & BOTH REAR SHOCKS WEAK/LEAKING
CUSTOMER WAS INFORMED OF CONCERN

| PARTS | QTY | FP-NUMBER | DESCRIPTION | UNIT PRICE | |
|---|---|---|---|---|---|
| | | | JOB # 4 TOTAL PARTS | | 0.00 |

                                JOB # 4 TOTAL LABOR & PARTS          0.00

WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  (LAWARE)
SF015001 Q (6916)

PAGE 1 OF 3          CUSTOMER COPY          [CONTINUED ON NEXT PAGE]          10:57am

**CRAIN**
**Buick GMC**

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

**CRAIN**
AUTOMOTIVE TEAM

www.crainteam.com
STATE REG# F212

☐ This vehicle received without face to face customer contact.

| SERVICE HISTORY | | | | | | | CELL: 501-428-0619 |
|---|---|---|---|---|---|---|---|
| DATE | REPAIR ORDER | MILEAGE | ADVISOR | TECHNICIAN | TYPE | OPERATION | OPERATION DESCRIPTION |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

SERVICE                    SALESPERSON NO.

| VEHICLE ID NO. | YEAR/MAKE/MODEL | STOCK NO. | LICENSE NO. | R.O. NO. |
|---|---|---|---|---|
| 3GCRKPE37AG195329 | 10/CHEVROLET TRUCK/SILVERADO 1500/C | | | 121128 |

CHRIS MILLER
11 BUDCHUCK LN
CONWAY, AR 72032

| CUSTOMER NO. | SERVICE CONTRACT | DELIVERY DATE | DELIVERY MILES | SELLING DEALER NO. | R.O. DATE |
|---|---|---|---|---|---|
| 1353499 | | | | | 01/11/17 |

| COLOR | | CONTRACT NO. | EXPIRATION DATE | EXPIRATION MILES | TAG NO. |
|---|---|---|---|---|---|
| | | | | | 4007 |

| TURBO | H/MG | AIR COND | P.S. | TRANS | MILEAGE | ADVISOR NO. | PRODUCTION DATE |
|---|---|---|---|---|---|---|---|
| N | CVZZ | Y | Y | A | 125,465 | 90610 | |

| RESIDENCE PHONE | TIME RECEIVED |
|---|---|
| 501-428-0619 | 06:58pm |

| BUSINESS PHONE | LABOR RATE |
|---|---|

| DATE/TIME PROMISED | PRIORITY |
|---|---|
| 01/12/17    06:00pm | 3 |

APPOINTMENT ☐ Yes  ☒ No
ADVISOR: HEATH

NOTICE: Customer is entitled to inspect or receive any components, parts or accessories replaced or removed by the shop

DO YOU WANT THE REPLACED?
☐ Yes    ☐ No

I hereby authorize the repair work therein set forth to be done by you, together with the furnishing by you of the necessary parts and other material for such repair, and agree that you are not responsible for any delays caused by unavailability or delayed availability of parts or material for any reason; that you neither assume or authorize any other person to assume for you any liability in connection with such repair; that you shall not be responsible for loss or damage to the above vehicle, or articles left therein in case of fire, theft or other cause beyond your control; that an express mechanic's lien is hereby acknowledged on the above vehicle to secure the amount of repairs thereto; that your employees may operate the above vehicle on streets, highways or elsewhere for the purpose of testing and/or inspecting such vehicle.

SIGNATURE

RECOMMENDED SERVICES

| OPERATION | OPERATION DESCRIPTION | NO7 MI | TOTAL |
|---|---|---|---|
| CVZGM108DR | GM 108K DEALER RECOM | MI | |

CALL WHEN VEHICLE IS READY
☐ YES    ☐ NO

**LABOR INSTRUCTIONS**

COMMENTS :
DROP OFF 501-428-0619 EXT WARRANTY

1  C  10CVZ            *DRIVEABILITY*
C/S CHECK ENGINE LIGHT ON. OIL PRESSURE DROPPING AND SAYS TO
TURN OFF VEHICLE. VEHICLE MAKING A GRINDING /KNOCKING NOISE.
OIL SENDING UNIT HAS BE REPLACED TWICE. EXT WARRANTY

2  C  10CVZ99P         *INSPECTION REPORT*
PERFORM 27 POINT MULTI-POINT INSPECTION

YOU ARE ENTITLED TO A PRICE ESTIMATE FOR THE REPAIRS YOU HAVE
AUTHORIZED. THE REPAIR MAY BE LESS THAN THE ESTIMATE, BUT WILL
NOT EXCEED THE ESTIMATE WITHOUT YOUR PERMISSION. YOUR
SIGNATURE WILL INDICATE YOUR ESTIMATE SELECTION.

SERVICE ADVISOR _____

PERSON CALLED _____

_____ DATE _____

APPROXIMATE COST _____

APPROVED _____ DISAPPROVED _____

SIGNATURE _____

Dealer is not a party to any Manufacturer's warranty on parts or service contained herein
THE DEALER DISCLAIMS ALL WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING
ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR
PURPOSE WITH RESPECT TO ANY PARTS, LABOR OR DIAGNOSTIC SERVICE FURNISHED
PER THIS ORDER.

406.25

195.00

*THANK YOU*
*WE*
*APPRECIATE*
*YOUR*

*BUSINESS!*

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 2 Pages

# EXHIBIT NO. 5

## SOUTHWESTRE PAYMENT

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**

# SouthwestRe®

SOUTHWESTRE
2400 Louisiana Blvd
Albuquerque, NM 87110

Attention: Heath
Card #:     5529-4206-5183-2215
CSC:        285
Expiration: 1/31/2020
Amount:     $1,248.09

ClaimNumber: 201701004235
RONumber: 121128
AmountPaid: 1248.0900

CustomerName: KACI MILLER
VIN: 3GCRKPE37AG195329
VarianceReasons: MSR,TAX



CORPORATE

5529  4206  5183  2215

5529

01/01    01/20

SOUTHWESTRE
QUESTIONS 877-727-7247

MasterCard

This is a one-time use stored value card, which cannot be overcharged and does not allow additional charges; all transactions will be tracked and audited. This card will be voided 3 days from date of issue if not charged.

Claim inquiries call (877) 727-7247
or fax (972) 813-0717

Sincerely,

Credit Card Processing



2215   285

Cirrus.

WEX BANK

Your card is issued and serviced by WEX Bank pursuant to license by MasterCard International. Its use is subject to the terms of your Cardmember Agreement.

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27 10:09:17
23CV-18-955
C20D02 : 12 Pages

# EXHIBIT NO. 6

# CRAIN BUICK REPAIRS
June 12, 2017

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**

PNCS907351



www.crainteam.com

*Buick GMC*

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | | ADVISOR NICHOLAS BOYER 50870 | | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|---|---|
| CHRIS MILLER 11 BUD CHUCK LN CONWAY, AR 72032-9788 | | LABOR RATE | LICENSE NO. | MILEAGE 133,004 / | COLOR | STOCK NO. |
| | | YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | DELIVERY DATE | DELIVERY MILES |
| | | VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | SELLING DEALER NO. | PRODUCTION DATE |
| | | F.T.E. NO. | | P.O. NO. | R.O. DATE 06/12/17 | |
| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | | | | MO: 133004 |

LABOR & PARTS
J#. 1 10CVZ06        CHECK ENGINE LIGHT            TECH(S):14990                840.00
CUSTOMER STATES CHECK ENGINE LIGHT ON, HAS X-WARRANTY NEEDS
EST.
ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
WHEN HOT
(HAS OVER 8 THOUSAND MILES ON OIL CHANGE)
(HAVE TORE DOWN ENGINE TO INSPECT PER X-WAR.)
FOUND EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.016, SPEC
NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD
STARTED TO SPIN, SCORED CRANKSHAFT & #4 CYLINDER WALL.
DECLINED ENGINE REPLACEMENT & ANY & ALL REPAIRS.

                        JOB #  1 TOTAL LABOR & PARTS        840.00

J#. 2 45CVZ03        STEERING/SUSPENSION          TECH(S):14990                 0.00
C/S POPPING NOISE WHILE DRIVING, NEEDS EST.
U JOINTS FOR REAR DRIVE SHAFT WORE/NOISY
BOTH ENGINE MOUNTS BROKEN/LOOSE
UPPER & LOWER BALLJOINTS HAVE SLACK/LOOSE, BOTH INNER
TIE ROD ENDS LOOSE
DECLINED ALL REPAIRS

                        JOB #  2 TOTAL LABOR & PARTS          0.00

J#. 3 47CVZ05        AXLE/DIFFERENTIAL            TECH(S):14990                 0.00
C/S 4WD MAKING A LOUD NOISE ON DRIVER SIDE WHEN ENGAGED,
NEEDS EST.
HAS MANUAL TRANSFER CASE - WORKING PROPERLY AT THIS
TIME
NO REPAIRS MADE AT THIS TIME

                        JOB #  3 TOTAL LABOR & PARTS          0.00

J#. 4 30CVZ04        AUTO TRANSMISSION           TECH(S):14990                 0.00
C/S TRANSMISSION FLUID LEAKING, NEEDS EST.
ALL TRANS COOLER LINES LEAKING
REAR DIFF PINION SEAL LEAKING, ALL 4 SHOCKS WEAK/LEAKING

                        JOB #  4 TOTAL LABOR & PARTS          0.00

J#. 5 30CVZ06        AUTO TRANSMISSION           TECH(S):14990                 0.00
C/S TRANSMISSION SLIPPING THEN BANGING HARD INTO GEAR, NEEDS
EST.
INTERNAL TRANS WEAR - FLUID DARK
DECLINED TRANSMISSION REPLACEMENT

                        JOB #  5 TOTAL LABOR & PARTS          0.00

J#. 6 10CVZ99P       INSPECTION REPORT           TECH(S):14990                 0.00
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

                        JOB #  6 TOTAL LABOR & PARTS          0.00

WARRANTY DISCLAIMER
The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

Shop Supplies and Environmental Disposal Charges
A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE; UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

PAGE 1 OF 2          SERVICE FILE COPY          [CONTINUED ON NEXT PAGE]   01:41pm

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  ERAINTINVE
SF619091 Q (09/16)



www.crainteam.com

# *Buick GMC*

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

PNCS907351

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| LABOR RATE | LICENSE NO. | MILEAGE 133,004 / | COLOR | STOCK NO. |
|---|---|---|---|---|

| YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | DELIVERY DATE | DELIVERY MILES |
|---|---|---|

| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|

| F.T.E. NO. | P.O. NO. | R. O. DATE 06/12/17 |
|---|---|---|

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS |
|---|---|---|

CALL WITH EST. 501-428-0619

MO: 133004

### WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership disclaims nor assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

```
LABOR_&_PARTS------------------------------------------
J#..7*55CV2OTHER   RED - OTHER          TECH(S):14990          0.00
Added Operation  (CHADW @ 07/11/2017 08:24)
              FOUND DURING VEHICLE INSPECTION
              TIRE LAMP ON, BELT NOISE
              CUSTOMER POSTPONED REPAIR

                         JOB #  7 TOTAL LABOR & PARTS          0.00

----------------------------------------------------------------
MISC------CODE--------DESCRIPTION------------------CONTROL NO---------
JOB # A       *SS ENVIRONMENTAL CHARGE                         84.00
                                        TOTAL - MISC           84.00

COMMENTS-----------------------------------------------------------
CALL WITH EST. 501-428-0619

TOTALS------------------------------------------------------------
```

THANK YOU FOR ALLOWING CRAIN BUICK, GMC
TO SERVICE YOUR VEHICLE.  WE STRIVE TO GAIN YOUR COMPLETE
SATISFACTION WITH EACH VISIT.  YOU MAY RECEIVE A CUSTOMER
SATISFACTION SURVEY FROM GENERAL MOTORS ASKING YOU TO
RATE YOUR SERVICE EXPERIENCE.  IF, FOR ANY REASON, YOU
CANNOT CHECK "COMPLETELY SATISFIED," PLEASE CONTACT YOUR
SERVICE ADVISOR IMMEDIATELY.

| TOTAL LABOR.... | 840.00 |
|---|---|
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 84.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 80.85 |

**TOTAL INVOICE $   1004.85**

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

### Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

CUSTOMER SIGNATURE
****************************   D U P L I C A T E   I N V O I C E   ****************************

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  ERAINTINVE
SF619091 O (09/16)



www.crainteam.com

# Buick GMC

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

PNCS907351

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| LABOR RATE | LICENSE NO. | MILEAGE 133,004 / | COLOR | STOCK NO. |
| YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | DELIVERY DATE | DELIVERY MILES |
| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | SELLING DEALER NO. | PRODUCTION DATE |
| F.T.E. NO. | P.O. NO. | | R.O. DATE 06/12/17 | |

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | | MO: 133004 |

LABOR & PARTS

J# 1 10CVZ06        CHECK ENGINE LIGHT        TECH(S): 14990        840.00
CUSTOMER STATES CHECK ENGINE LIGHT ON, HAS X-WARRANTY NEEDS
EST.
ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
WHEN HOT
(HAS OVER 8 THOUSAND MILES ON OIL CHANGE)
(HAVE TORE DOWN ENGINE TO INSPECT PER X-WAR.)
FOUND EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.016, SPEC
NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD
STARTED TO SPIN, SCORED CRANKSHAFT & #4 CYLINDER WALL.
DECLINED ENGINE REPLACEMENT & ANY & ALL REPAIRS.

                    JOB #  1 TOTAL LABOR & PARTS        840.00

J# 2 45CVZ03        STEERING/SUSPENSION        TECH(S): 14990        0.00
C/S POPPING NOISE WHILE DRIVING, NEEDS EST.
U JOINTS FOR REAR DRIVE SHAFT WORE/NOISY
BOTH ENGINE MOUNTS BROKEN/LOOSE
UPPER & LOWER BALLJOINTS HAVE SLACK/LOOSE, BOTH INNER
TIE ROD ENDS LOOSE
DECLINED ALL REPAIRS

                    JOB #  2 TOTAL LABOR & PARTS        0.00

J# 3 47CVZ05        AXLE/DIFFERENTIAL        TECH(S): 14990        0.00
C/S 4WD MAKING A LOUD NOISE ON DRIVER SIDE WHEN ENGAGED,
NEEDS EST.
HAS MANUAL TRANSFER CASE - WORKING PROPERLY AT THIS
TIME
NO REPAIRS MADE AT THIS TIME

                    JOB #  3 TOTAL LABOR & PARTS        0.00

J# 4 30CVZ04        AUTO TRANSMISSION        TECH(S): 14990        0.00
C/S TRANSMISSION FLUID LEAKING, NEEDS EST.
ALL TRANS COOLER LINES LEAKING
REAR DIFF PINION SEAL LEAKING, ALL 4 SHOCKS WEAK/LEAKING

                    JOB #  4 TOTAL LABOR & PARTS        0.00

J# 5 30CVZ06        AUTO TRANSMISSION        TECH(S): 14990        0.00
C/S TRANSMISSION SLIPPING THEN BANGING HARD INTO GEAR, NEEDS
EST.
INTERNAL TRANS WEAR - FLUID DARK
DECLINED TRANSMISSION REPLACEMENT

                    JOB #  5 TOTAL LABOR & PARTS        0.00

J# 6 10CVZ99P        INSPECTION REPORT        TECH(S): 14990        0.00
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

                    JOB #  6 TOTAL LABOR & PARTS        0.00

WARRANTY DISCLAIMER
The warranties on these parts are the
manufacturer's. The CRAIN AUTOMOTIVE
TEAM Dealership disclaims all warranties,
either expressed or implied, including any
implied warranty of merchantability or
fitness for a particular purpose. The CRAIN
AUTOMOTIVE TEAM Dealership doesn't
assume nor authorize any person to assume
any liability in connection with the sale of
these parts. This disclaimer in no way affects
the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER
SITUATION BEYOND OUR CONTROL, WE ARE
NOT RESPONSIBLE FOR LOSS OR DAMAGE
TO VEHICLES OR ITEMS LEFT IN VEHICLES.

Shop Supplies and Environmental
Disposal Charges
A charge equal to 10% of the value of total
labor charges is due for all repairs. Applicable
supply items which are included in the charge
include fasteners, cleaners, chemicals,
solvents, lubricants, certain sealers, rags,
towels and other expendable items which are
not otherwise specifically itemized on your
invoice. Environmental Disposal charges are
to offset the cost of managing, storing and
disposing of wastes in accordance with local,
state and federal laws. The actual value of
these items used in your repair may be more
or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I
HEREBY CERTIFY THAT THE
INFORMATION CONTAINED IS
ACCURATE: UNLESS OTHERWISE
SHOWN SERVICES DESCRIBED
WERE PERFORMED AT NO CHARGE
TO OWNER. THERE WAS NO
INDICATION FROM THE APPEARANCE
OF THE VEHICLE OR OTHERWISE,
THAT ANY PART REPAIRED OR
REPLACED UNDER THIS CLAIM HAD
BEEN CONNECTED IN ANY WAY WITH
ANY ACCIDENT, NEGLIGENCE OR
MISUSE. RECORDS SUPPORTING
THIS CLAIM ARE AVAILABLE FOR (1)
YEAR FROM THE DATE OF PAYMENT
NOTIFICATION AT THE SERVICING
DEALER FOR INSPECTION BY
REPRESENTATIVES.

| PAGE 1 OF 2 | ACCOUNTING COPY | [CONTINUED ON NEXT PAGE]   01:41pm | AUTHORIZED SIGNATURE |
|---|---|---|---|

The Reynolds and Reynolds Company  ERAINTINVE
SF619091 Q (09/16)



www.crainteam.com

**Buick GMC**

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

PNCS907351

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| LABOR RATE | LICENSE NO. | MILEAGE 133,004 / | COLOR | STOCK NO. |
|---|---|---|---|---|

YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR

| DELIVERY DATE | DELIVERY MILES |

VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9

| SELLING DEALER NO. | PRODUCTION DATE |

| F. T. E. NO. | P.O. NO. | R. O. DATE 06/12/17 |

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 133004 |

**WARRANTY DISCLAIMER**

LABOR & PARTS----------------------------------------------------
J# 7*55CVZOTHER    RED    OTHER              TECH(S):14990        0.00
Added Operation  (CHADW @ 07/11/2017 08:24)
      FOUND DURING VEHICLE INSPECTION
      TIRE LAMP ON, BELT NOISE
      CUSTOMER POSTPONED REPAIR

                    JOB #  7 TOTAL LABOR & PARTS        0.00

-----------------------------------------------------------------
MISC------CODE-------DESCRIPTION--------------------CONTROL NO--------
JOB # A     *SS  ENVIRONMENTAL CHARGE                      84.00
                                TOTAL - MISC        84.00

COMMENTS---------------------------------------------------------
CALL WITH EST. 501-428-0619

TOTALS----------------------------------------------------------

THANK YOU FOR ALLOWING CRAIN BUICK, GMC
TO SERVICE YOUR VEHICLE.  WE STRIVE TO GAIN YOUR COMPLETE
SATISFACTION WITH EACH VISIT.  YOU MAY RECEIVE A CUSTOMER
SATISFACTION SURVEY FROM GENERAL MOTORS ASKING YOU TO
RATE YOUR SERVICE EXPERIENCE.  IF, FOR ANY REASON, YOU
CANNOT CHECK "COMPLETELY SATISFIED," PLEASE CONTACT YOUR
SERVICE ADVISOR IMMEDIATELY.

| TOTAL LABOR.... | 840.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 84.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 80.85 |

**TOTAL INVOICE $   1004.85**

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

**Shop Supplies and Environmental Disposal Charges**
A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

_____
CUSTOMER SIGNATURE
*******************      D U P L I C A T E   I N V O I C E      ***************************

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  ERAINTINVE
SF619091 Q (09/16)



# *Buick GMC*

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

www.crainteam.com

 

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|
| CHRIS MILLER 11 BUD CHUCK LN CONWAY, AR 72032-9788 | LABOR RATE | LICENSE NO. | MILEAGE 133,004 / | COLOR |
| | YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | DELIVERY DATE | DELIVERY MILES |
| | VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | SELLING DEALER NO. | PRODUCTION DATE |
| | F.T.E. NO. | P.O. NO. | R.O. DATE 06/12/17 | |

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 133004 |
|---|---|---|---|

## LABOR & PARTS

**J# 1 10CVZ06          CHECK ENGINE LIGHT          TECH(S):14990          840.00**
CUSTOMER STATES CHECK ENGINE LIGHT ON, HAS X-WARRANTY NEEDS
EST.
ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
WHEN HOT
(HAS OVER 8 THOUSAND MILES ON OIL CHANGE)
(HAVE TORE DOWN ENGINE TO INSPECT PER X-WAR.)
FOUND EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.016, SPEC
NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD
STARTED TO SPIN, SCORED CRANKSHAFT & #4 CYLINDER WALL.
DECLINED ENGINE REPLACEMENT & ANY & ALL REPAIRS.

                    JOB #  1 TOTAL LABOR & PARTS      840.00

**J# 2 45CVZ03          STEERING/SUSPENSION          TECH(S):14990          0.00**
C/S POPPING NOISE WHILE DRIVING, NEEDS EST.
U JOINTS FOR REAR DRIVE SHAFT WORE/NOISY
BOTH ENGINE MOUNTS BROKEN/LOOSE
UPPER & LOWER BALLJOINTS HAVE SLACK/LOOSE, BOTH INNER
TIE ROD ENDS LOOSE
DECLINED ALL REPAIRS

                    JOB #  2 TOTAL LABOR & PARTS        0.00

**J# 3 47CVZ05          AXLE/DIFFERENTIAL          TECH(S):14990          0.00**
C/S 4WD MAKING A LOUD NOISE ON DRIVER SIDE WHEN ENGAGED,
NEEDS EST.
HAS MANUAL TRANSFER CASE - WORKING PROPERLY AT THIS
TIME
NO REPAIRS MADE AT THIS TIME

                    JOB #  3 TOTAL LABOR & PARTS        0.00

**J# 4 30CVZ04          AUTO TRANSMISSION          TECH(S):14990          0.00**
C/S TRANSMISSION FLUID LEAKING, NEEDS EST.
ALL TRANS COOLER LINES LEAKING
REAR DIFF PINION SEAL LEAKING, ALL 4 SHOCKS WEAK/LEAKING

                    JOB #  4 TOTAL LABOR & PARTS        0.00

**J# 5 30CVZ06          AUTO TRANSMISSION          TECH(S):14990          0.00**
C/S TRANSMISSION SLIPPING THEN BANGING HARD INTO GEAR, NEEDS
EST.
INTERNAL TRANS WEAR - FLUID DARK
DECLINED TRANSMISSION REPLACEMENT

                    JOB #  5 TOTAL LABOR & PARTS        0.00

**J# 6 10CVZ99P          INSPECTION REPORT          TECH(S):14990          0.00**
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

                    JOB #  6 TOTAL LABOR & PARTS        0.00

### WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

### Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE

The Reynolds and Reynolds Company  ERAINTINVE
SF619091 Q (09/16)



www.crainteam.com

# Buick GMC

710 South Amity Rd. • Conway, Arkansas 72032
(501) 329-6825 Business • (501) 329-9127 Fax

 

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| LABOR RATE | LICENSE NO. | MILEAGE 133,004 | COLOR | STOCK NO. |
|---|---|---|---|---|
| YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | | DELIVERY DATE | DELIVERY MILES |
| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | | SELLING DEALER NO. | PRODUCTION DATE |
| F.T.E. NO. | P.O. NO. | | R.O. DATE 06/12/17 | |

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 133004 |
|---|---|---|---|

LABOR & PARTS------------------------------------------------
J#. 7+55CVZOTHER      RED - OTHER                TECH(S): 14990                       0.00
Added Operation  (CHADW @ 07/11/2017 08:24)
     FOUND DURING VEHICLE INSPECTION
     TIRE LAMP ON, BELT NOISE
     CUSTOMER POSTPONED REPAIR

                           JOB #  7 TOTAL LABOR & PARTS        0.00
-------------------------------------------------------------
MISC------CODE--------DESCRIPTION----------------CONTROL NO--------
JOB # A     *SS  ENVIRONMENTAL CHARGE                           84.00
                                        TOTAL - MISC           84.00

COMMENTS-----------------------------------------------------
CALL WITH EST. 501-428-0619

TOTALS-------------------------------------------------------

THANK YOU FOR ALLOWING CRAIN BUICK, GMC
TO SERVICE YOUR VEHICLE.  WE STRIVE TO GAIN YOUR COMPLETE
SATISFACTION WITH EACH VISIT.  YOU MAY RECEIVE A CUSTOMER
SATISFACTION SURVEY FROM GENERAL MOTORS ASKING YOU TO
RATE YOUR SERVICE EXPERIENCE.  IF, FOR ANY REASON, YOU
CANNOT CHECK "COMPLETELY SATISFIED," PLEASE CONTACT YOUR
SERVICE ADVISOR IMMEDIATELY.

| TOTAL LABOR.... | 840.00 |
|---|---|
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 84.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 80.85 |

**TOTAL INVOICE $    1004.85**

         CUSTOMER SIGNATURE
***************************     D U P L I C A T E   I N V O I C E     ***************************

## WARRANTY DISCLAIMER

The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

### Shop Supplies and Environmental Disposal Charges

A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE. UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company ERAINTINVE
SF619091 O (09/16)

**PNCS907351**

### *CRAIN*
# Buick GMC

710 South Amity Rd.  •  Conway, Arkansas 72032
(501) 329-6825 Business  •  (501) 329-9127 Fax





**PNCS907351**

**www.crainteam.com**

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER 50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|
| | LABOR RATE | LICENSE NO. | MILEAGE 133,004 | COLOR / | STOCK NO. |

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | | DELIVERY DATE | DELIVERY MILES |
|---|---|---|---|
| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | | SELLING DEALER NO. | PRODUCTION DATE |
| F.T.E. NO. | P.O. NO. | R.O. DATE 06/12/17 | |

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 133004 |
|---|---|---|---|

LABOR & PARTS - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**J# 1 10CVZ06       CHECK ENGINE LIGHT       TECH(S):14990       840.00**
CUSTOMER STATES CHECK ENGINE LIGHT ON, HAS X-WARRANTY NEEDS
EST.
ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
WHEN HOT
(HAS OVER 8 THOUSAND MILES ON OIL CHANGE)
(HAVE TORE DOWN ENGINE TO INSPECT PER X-WAR.)
FOUND EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.016, SPEC
NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD
STARTED TO SPIN, SCORED CRANKSHAFT & #4 CYLINDER WALL.
DECLINED ENGINE REPLACEMENT & ANY & ALL REPAIRS.

                                      JOB #  1 TOTAL LABOR & PARTS       840.00

**J# 2 45CVZ03       STEERING/SUSPENSION       TECH(S):14990       0.00**
C/S POPPING NOISE WHILE DRIVING, NEEDS EST.
U JOINTS FOR REAR DRIVE SHAFT WORE/NOISY
BOTH ENGINE MOUNTS BROKEN/LOOSE
UPPER & LOWER BALLJOINTS HAVE SLACK/LOOSE, BOTH INNER
TIE ROD ENDS LOOSE
DECLINED ALL REPAIRS

                                      JOB #  2 TOTAL LABOR & PARTS         0.00

**J# 3 47CVZ05       AXLE/DIFFERENTIAL       TECH(S):14990       0.00**
C/S 4WD MAKING A LOUD NOISE ON DRIVER SIDE WHEN ENGAGED,
NEEDS EST.
HAS MANUAL TRANSFER CASE - WORKING PROPERLY AT THIS
TIME
NO REPAIRS MADE AT THIS TIME

                                      JOB #  3 TOTAL LABOR & PARTS         0.00

**J# 4 30CVZ04       AUTO TRANSMISSION       TECH(S):14990       0.00**
C/S TRANSMISSION FLUID LEAKING, NEEDS EST.
ALL TRANS COOLER LINES LEAKING
REAR DIFF PINION SEAL LEAKING, ALL 4 SHOCKS WEAK/LEAKING

                                      JOB #  4 TOTAL LABOR & PARTS         0.00

**J# 5 30CVZ06       AUTO TRANSMISSION       TECH(S):14990       0.00**
C/S TRANSMISSION SLIPPING THEN BANGING HARD INTO GEAR, NEEDS
EST.
INTERNAL TRANS WEAR - FLUID DARK
DECLINED TRANSMISSION REPLACEMENT

                                      JOB #  5 TOTAL LABOR & PARTS         0.00

**J# 6 10CVZ99P       INSPECTION REPORT       TECH(S):14990       0.00**
PERFORM 27 POINT MULTI-POINT INSPECTION
COMPLETED 27 POINT MULTI-POINT INSPECTION

                                      JOB #  6 TOTAL LABOR & PARTS         0.00

**WARRANTY DISCLAIMER**
The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

**Shop Supplies and Environmental Disposal Charges**
A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  ERANTINVE

**PNCS907351**



## CRAIN
### Buick GMC

710 South Amity Rd.  •  Conway, Arkansas 72032
(501) 329-6825 Business  •  (501) 329-9127 Fax

 

**PNCS907351**

www.crainteam.com

CELL: 501-428-0619

| CUSTOMER NO. 1353499 | ADVISOR NICHOLAS BOYER  50870 | TAG NO. 7565 | INVOICE DATE 07/17/17 | INVOICE NO. PNCS907351 |
|---|---|---|---|---|

| CHRIS MILLER | LABOR RATE | LICENSE NO. | MILEAGE 133,004 | COLOR | STOCK NO. |
|---|---|---|---|---|---|

CHRIS MILLER
11 BUD CHUCK LN
CONWAY, AR 72032-9788

| YEAR / MAKE / MODEL 10/CHEVROLET TRUCK/SILVERADO 1500/CR | DELIVERY DATE | DELIVERY MILES |
|---|---|---|

| VEHICLE I.D. NO. 3 G C R K P E 3 7 A G 1 9 5 3 2 9 | SELLING DEALER NO. | PRODUCTION DATE |
|---|---|---|

| F.T.E. NO. | P.O. NO. | R.O. DATE 06/12/17 |
|---|---|---|

| RESIDENCE PHONE 501-428-0619 | BUSINESS PHONE | COMMENTS | MO: 133004 |
|---|---|---|---|

```
LABOR & PARTS------------------------------------------------
J# 7+55CVZOTHER      RED - OTHER         TECH(S):14990              0.00
Added Operation  (CHADW @ 07/11/2017 08:24)
              FOUND DURING VEHICLE INSPECTION
              TIRE LAMP ON. BELT NOISE
              CUSTOMER POSTPONED REPAIR

                           JOB #  7 TOTAL LABOR & PARTS          0.00
-------------------------------------------------------------
MISC------CODE--------DESCRIPTION-------------------CONTROL NO-----
JOB # A      *SS  ENVIRONMENTAL CHARGE                          84.00
                           TOTAL - MISC                         84.00

COMMENTS------------------------------------------------------
CALL WITH EST. 501-428-0619

TOTALS--------------------------------------------------------
```

THANK YOU FOR ALLOWING CRAIN BUICK, GMC
TO SERVICE YOUR VEHICLE.  WE STRIVE TO GAIN YOUR COMPLETE
SATISFACTION WITH EACH VISIT.  YOU MAY RECEIVE A CUSTOMER
SATISFACTION SURVEY FROM GENERAL MOTORS ASKING YOU TO
RATE YOUR SERVICE EXPERIENCE.  IF, FOR ANY REASON, YOU
CANNOT CHECK "COMPLETELY SATISFIED," PLEASE CONTACT YOUR
SERVICE ADVISOR IMMEDIATELY.

| | |
|---|---|
| TOTAL LABOR.... | 840.00 |
| TOTAL PARTS.... | 0.00 |
| TOTAL SUBLET... | 0.00 |
| TOTAL G.O.G.... | 0.00 |
| TOTAL MISC CHG. | 84.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX...... | 80.85 |
| **TOTAL INVOICE $** | **1004.85** |

CUSTOMER SIGNATURE

Paid
MIC

### WARRANTY DISCLAIMER
The warranties on these parts are the manufacturer's. The CRAIN AUTOMOTIVE TEAM Dealership disclaims all warranties, either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose. The CRAIN AUTOMOTIVE TEAM Dealership doesn't assume nor authorize any person to assume any liability in connection with the sale of these parts. This disclaimer in no way affects the terms of the manufacturer's warranty.

IN CASE OF FIRE, THEFT OR ANY OTHER SITUATION BEYOND OUR CONTROL, WE ARE NOT RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLES OR ITEMS LEFT IN VEHICLES.

#### Shop Supplies and Environmental Disposal Charges
A charge equal to 10% of the value of total labor charges is due for all repairs. Applicable supply items which are included in the charge include fasteners, cleaners, chemicals, solvents, lubricants, certain sealers, rags, towels and other expendable items which are not otherwise specifically itemized on your invoice. Environmental Disposal charges are to offset the cost of managing, storing and disposing of wastes in accordance with local, state and federal laws. The actual value of these items used in your repair may be more or less than the value you are charged.

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED IS ACCURATE: UNLESS OTHERWISE SHOWN SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY REPRESENTATIVES.

AUTHORIZED SIGNATURE
The Reynolds and Reynolds Company  ERAINTIME

```
06/06/2018                    HISTORY LISTING
13:16:08                                              PAGE 1
*------------------------------------------------------------------

CUSTOMER NAME : CHRIS MILLER           SERIAL NO.  : 3GCRKPE37AG195329
------------------------------------------------------------------

R.O NO. : 907351     R.O DATE : 06/12/2017     R.O TYPE : S
                     MILEAGE  : 133004      ADVISOR NO. : 50870


JOB NUMBER : 1   OPERATION 10CVZ06        OP. DESC. CHECK ENGINE LIGHT
SALE TYPE : C   TECHNICIAN NO(S).  14990
COMPLAINT : CUSTOMER STATES CHECK ENGINE LIGHT ON, HAS X-WARRANTY NEEDS
             EST.
CAUSE      : ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
             WHEN HOT
             (HAS OVER 8 THOUSAND MILES ON OIL CHANGE)
ORIGINAL   : ENGINE HAVING EXCESSIVE WEAR - KNOCKING & LOW OIL PRESSURE
CAUSE        WHEN HOT
CORRECTION : (HAVE TORE DOWN ENGINE TO INSPECT PER X-WAR.)
             FOUND EXCESSIVE CRANKSHAFT ENDPLAY (MEASURED 0.016, SPEC
             NO MORE THAN 0.0078) CYLINDER #4 & #8 ROD BEARINGS HAD
             STARTED TO SPIN, SCORED CRANKSHAFT & #4 CYLINDER WALL.
             DECLINED ENGINE REPLACEMENT & ANY & ALL REPAIRS.
ORIGINAL   : (HAVE TORE DOWN ENGINE TO INSPECT - 6.0 HRS)
CORRECTION


JOB NUMBER : 2   OPERATION 45CVZ03        OP. DESC. STEERING/SUSPENSION
SALE TYPE : C   TECHNICIAN NO(S).  14990
COMPLAINT : C/S POPPING NOISE WHILE DRIVING, NEEDS EST.
CAUSE      : U JOINTS FOR REAR DRIVE SHAFT WORE/NOISY
             BOTH ENGINE MOUNTS BROKEN/LOOSE
             UPPER & LOWER BALLJOINTS HAVE SLACK/LOOSE, BOTH INNER
             TIE ROD ENDS LOOSE
CORRECTION : DECLINED ALL REPAIRS


JOB NUMBER : 3   OPERATION 47CVZ05        OP. DESC. AXLE/DIFFERENTIAL
SALE TYPE : C   TECHNICIAN NO(S).  14990
COMPLAINT : C/S 4WD MAKING A LOUD NOISE ON DRIVER SIDE WHEN ENGAGED,
             NEEDS EST.
CAUSE      : HAS MANUAL TRANSFER CASE - WORKING PROPERLY AT THIS
             TIME
CORRECTION : NO REPAIRS MADE AT THIS TIME


JOB NUMBER : 4   OPERATION 30CVZ04        OP. DESC. AUTO TRANSMISSION
SALE TYPE : C   TECHNICIAN NO(S).  14990
COMPLAINT : C/S TRANSMISSION FLUID LEAKING, NEEDS EST.
CAUSE      : ALL TRANS COOLER LINES LEAKING
             REAR DIFF PINION SEAL LEAKING, ALL 4 SHOCKS WEAK/LEAKING


JOB NUMBER : 5   OPERATION 30CVZ06        OP. DESC. AUTO TRANSMISSION
SALE TYPE : C   TECHNICIAN NO(S).  14990
COMPLAINT : C/S TRANSMISSION SLIPPING THEN BANGING HARD INTO GEAR, NEEDS
             EST.
CAUSE      : INTERNAL TRANS WEAR - FLUID DARK
CORRECTION : DECLINED TRANSMISSION REPLACEMENT
```

--------------------------------------------------------------------------------

```
JOB NUMBER : 6   OPERATION 10CVZ99P        OP. DESC. INSPECTION REPORT
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : PERFORM 27 POINT MULTI-POINT INSPECTION
CORRECTION : COMPLETED 27 POINT MULTI-POINT INSPECTION


JOB NUMBER : 7   OPERATION 55CVZOTHER      OP. DESC. RED - OTHER
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : FOUND DURING VEHICLE INSPECTION
CAUSE      : TIRE LAMP ON, BELT NOISE
CORRECTION : CUSTOMER POSTPONED REPAIR



COMMENTS   : CALL WITH EST. 501-428-0619
```

--------------------------------------------------------------------------------

```
R.O NO. : 121128    R.O DATE : 01/11/2017     R.O TYPE : S
                    MILEAGE  : 125465          ADVISOR NO. : 90610


JOB NUMBER : 1   OPERATION 10CVZ            OP. DESC. DRIVEABILITY
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : C/S CHECK ENGINE LIGHT ON. OIL PRESSURE DROPPING AND SAYS TO
             TURN OFF VEHICLE. VEHICLE MAKING A GRINDING /KNOCKING NOISE.
             OIL SENDING UNIT HAS BE REPLACED TWICE. EXT WARRANTY
CAUSE      : OIL RELIEF VALVE STICKING OPEN RESULTING IN LOW PRESSURE
             TO OIL PRESSURE SENSOR SETTING P0521,
CORRECTION : REPLACED OIL RELIEF VALVE IN OIL PAN & PEFORMED OIL CHANGE
             (UPON INSPECTION FOUND OIL PRESSURE SENSOR CONNECTOR
             DAMAGED - LOCKTAB BROKEN OFF) (STAYING ON AT THIS TIME)
             RETESTED - OIL PRESSURE NOW WITH-IN FACTORY SPEC & PASSING
             SPECIFIC DTC TEST.


JOB NUMBER : 2   OPERATION 10CVZ99P        OP. DESC. INSPECTION REPORT
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : PERFORM 27 POINT MULTI-POINT INSPECTION
CORRECTION : COMPLETED 27 POINT MULTI-POINT INSPECTION


JOB NUMBER : 3   OPERATION 56CVZLEAK       OP. DESC. YELLOW - FLUID LEAK
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : FOUND DURING VEHICLE INSPECTION
CAUSE      : FLUID LEAK WILL REQUIRE ATTETNION SOON
             ALL TRANS COOLER LINES, BOTH FRONT AXLE SEALS LEAKING
CORRECTION : CUSTOMER WAS INFORMED OF CONCERN


JOB NUMBER : 4   OPERATION 56CVZSUSP       OP. DESC. YELLOW - SUSPENSION
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : FOUND DURING VEHICLE INSPECTION  .
CAUSE      : SUSPENSION CONCERN WILL REQUIRE ATTENTION SOON
             BOTH FRONT STRUTS & BOTH REAR SHOCKS WEAK/LEAKING
CORRECTION : CUSTOMER WAS INFORMED OF CONCERN
```

-------------------------------------------------------------------------------

```
JOB NUMBER : 5   OPERATION 56CVZBELT        OP. DESC. YELLOW - BELT
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : FOUND DURING VEHICLE INSPECTION
CAUSE      : BELT(S) WILL REQUIRE ATTENTION SOON
             BOTH BELTS WORE
CORRECTION : CUSTOMER WAS INFORMED OF CONCERN


JOB NUMBER : 6   OPERATION 56CVZOTHER       OP. DESC. YELLOW - OTHER
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : FOUND DURING VEHICLE INSPECTION
CAUSE      : CONCERN WILL REQUIRE ATTENTION SOON
             TIRE LAMP ON
CORRECTION : CUSTOMER WAS INFORMED OF CONCERN


JOB NUMBER : 7   OPERATION 20CVZ            OP. DESC. *A/C & HEATING
SALE TYPE  : C   TECHNICIAN NO(S).  14990
COMPLAINT  : C/S VEHICLE IS MAKING LOUD GRINDING NOISE COMING FROM UNDER
             THE HOOD
CAUSE      : BEARING IN A/C COMPRESSOR BAD NOISY
CORRECTION : REPLACED A/C COMPRESSOR, EVACUATED &
             RECHARGED A/C SYSTEM. (NO FURTHER ABNORMAL NOISE HEARD)
             NO WARRANTY ON COMPRESSOR FROM WHERE IT WAS BOUGHT BECAUSE
             THE DRYER WAS NOT REPLACED



COMMENTS   : DROP OFF 501-428-0619 EXT WARRANTY
             SUPERIOR PROTECTION PLAN
             1-866-410-6748
             AUTH AMOUNT $485.84
             AUTH NUMBER 80271288
             DEDUCTIBLE $100.00

             AUTH AMOUNT $762.25
             AUTH NUMBER 3269965
             FAX ATTENTION CASHIER
             1-972-813-0717


RECOMMEND  : TECH RECOMMENDATION ON RO#121128
             FRONT STRUTS LEAKING
             REAR SHOCKS LEAKING
             AXLE SEAL LEAKING
             CALL HEATH FOR APPOINTMENT 501-932-0654
```

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jun-27  10:09:17
23CV-18-955
C20D02 : 2 Pages

# EXHIBIT NO. 7

# ORDER TO
# IMPOUND REPO
July 17, 2017

*Christopher Miller and Kaci Miller v. First Automotive Service Corporation, et al.*

Circuit Court of Faulkner County, Arkansas

**PLAINTIFF's COMPLAINT**

# Order To Impound Repo

| Date Assigned: 07/17/2017 | Acct #: 82629642 | | Case#: 2053622485 | Reference#: 4836 |
|---|---|---|---|---|

| **Client: Credit Acceptance** | **To: A Professional Auto Recovery** |
|---|---|
| 25505 W 12 Mile Road | 3605 hwy 161 |
| Southfield, Michi 48034 | Nlr, AR 72117 |
| Phone: 800-303-1228 Fax: | Phone: 5017472571 Fax: 5017471527 |
| By : BIANCA GIBSON / 800-303-1228 EXT: 4199 | |
| Lien Holder: Credit Acceptance | Adjusters : |

| **Debtor:  KACI MILLER** | **Cosigner : CHRISTOPHER MILLER** |
|---|---|
| SSN: redacted   DOB: redacted | SSN: redacted   DOB: redacted |

**Borrower - Home**
## CRAIN BUICK GMC 710 S AMITY RD
CONWAY AR 72032
Phone: 5014286656

**Borrower - Work Name: SS**

**Borrower - Work Name: SS**

**Co Signer - Home**
### 13 Bud Chuck Ln
Conway AR 72032
Phone: 5014280619

**Co Signer - Work** Name: RENTAL CONCEPTS LLC

**Landlord Address** Name: KAREN E HOLMES

CONWAY AR
Phone: 5013277655

*Contact Jerry (sas) 932-0651*

*800*
*303-1228*
*Ext 4199*

**Additional Information:**
Debtors DL Num:
Cosigners DL Num:
Employment Dept:
Supervisors Phone:
Length At Address: 10yrs 2months
OwnsRents: RENTS
Vehicle Style: Crew Cab 4
Keys Sent:
Dealer Phone: 5016791285
Ins Company: STATE FARM
Ins Exp:
Notes:
CAC DATA:
Debtors Address History:
Cosigners Address History:
Starter Interrupt: GPS PR
Secondary Phone:
Tertiary Phone:
Department at place of employment:
Supervisors phone:

| Year: **2010** | Make: **Chevrolet** Model: **Silverado** | Color: **WHITE** |
|---|---|---|
| Lic#: | St: | |
| Dealer: II FRIENDS AUTO SALES LLC | VIN: **3GCRKPE37AG195329** Key Codes: | |

| Monthly Payments | Balance on Account | Amount Past Due | Delinquent Since |
|---|---|---|---|
| Date Rec'd : | Time :    :   AM / PM   PD: | I.D.#: | |
| Recovered From: | | | |
| Adjuster: | Comm $: | Repo Fee $: | |
| Miles on Vehicle: | Tags: | Other Charges $: | |
| Major Damage: ( )  Personals: ( ) Driveable: ( ) | | Bill to Customer $: | |

THE CIRCUIT COURT OF __FAULKNER__ COUNTY, ARKANSAS

__Civil__ DIVISION [Civil, Probate, etc.]

Christopher Miller and Kaci Miller
_____
Plaintiff

v.                                          No. _____

First Automotive Service Corporation, et al.
_____
Defendant

## SUMMONS

### THE STATE OF ARKANSAS TO DEFENDANT:

First Automotive Service Corporation
_____       [Defendant's name and address.]
c/o Corporation Service Company
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425

A lawsuit has been filed against you.  The relief demanded is stated in the attached
complaint.  Within 30 days after service of this summons on you (not counting the day
you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other
correctional facility in Arkansas — you must file with the clerk of this court a written
answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil
Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose
name and address are: William T. Crowder, CROWDER MCGAHA, LLP, 5507 Ranch Drive, Suite 202, Little Rock, AR 72223-0043

If you fail to respond within the applicable time period, judgment by default may be
entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office
Faulkner County Circuit Clerk
_____

724 Locust St., Conway, AR 72034
_____

_____
[Signature of Clerk or Deputy Clerk]

Date:_____

[SEAL]

No. _____ **This summons is for** First Automotive Service Corporation _____ *(name of* *Defendant).*

## PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____
_____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____
_____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of
abode at _____[address] with _____[name], a
person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual],
an agent authorized by appointment or by law to receive service of summons on behalf of
_____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served
the summons and complaint on the defendant by certified mail, return receipt requested,
restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a
copy of the summons and complaint by first-class mail to the defendant together with two
copies of a notice and acknowledgment and received the attached notice and
acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

By: _____
[Signature of server]

_____
[Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
[Signature of server]

_____
[Printed name]

Address: _____

_____

Phone: _____

Subscribed and sworn to before me this date: _____

_____
Notary Public

My commission expires: _____

Additional information regarding service or attempted service:

_____

_____



Arkansas Judiciary

**Case Title:**   CHRISTOPHER MILLER V FIRST AUTOMOTIVE
SERVICE CORP

**Case Number:**   23CV-18-955

**Type:**   SUMMONS - FILER PREPARED

So Ordered

BDonohue

B. Donohue

Electronically signed by RADONOHUE on 2018-06-27 10:49:26    page 4 of 4

THE CIRCUIT COURT OF _FAULKNER___ COUNTY, ARKANSAS

_Civil___ DIVISION [Civil, Probate, etc.]

Christopher Miller and Kaci Miller
_____
Plaintiff

v.                                    No. _____

First Automotive Service Corporation, et al.
_____
Defendant

SUMMONS

**THE STATE OF ARKANSAS TO DEFENDANT:**

Credit Acceptance Corporation
_____     [Defendant's name and address.]
c/o Corporation Service Company
300 Spring Building, Suite 900, 300 S. Spring Street, Little Rock, AR 72201-2425

A lawsuit has been filed against you. The relief demanded is stated in the attached complaint. Within 30 days after service of this summons on you (not counting the day you received it) — or 60 days if you are incarcerated in any jail, penitentiary, or other correctional facility in Arkansas — you must file with the clerk of this court a written answer to the complaint or a motion under Rule 12 of the Arkansas Rules of Civil Procedure.

The answer or motion must also be served on the plaintiff or plaintiff's attorney, whose name and address are: William T. Crowder, CROWDER MCGAHA, LLP, 5507 Ranch Drive, Suite 202, Little Rock, AR 72223-0043

If you fail to respond within the applicable time period, judgment by default may be entered against you for the relief demanded in the complaint.

CLERK OF COURT

Address of Clerk's Office
  Faulkner County Circuit Clerk
_____
  724 Locust St., Conway, AR 72034
_____

                                    _____
                                    [Signature of Clerk or Deputy Clerk]

                                    Date:_____

[SEAL]

No. _____ **This summons is for** <u>Credit Acceptance Corporation</u> *(name of Defendant).*

### PROOF OF SERVICE

☐ I personally delivered the summons and complaint to the individual at _____ _____[place] on _____ [date]; or

☐ I left the summons and complaint in the proximity of the individual by _____ _____ after he/she refused to receive it when I offered it to him/her; or

☐ I left the summons and complaint at the individual's dwelling house or usual place of abode at _____[address] with _____[name], a person at least 14 years of age who resides there, on _____[date]; or

☐ I delivered the summons and complaint to _____[name of individual], an agent authorized by appointment or by law to receive service of summons on behalf of _____[name of defendant] on _____[date]; or

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I served the summons and complaint on the defendant by certified mail, return receipt requested, restricted delivery, as shown by the attached signed return receipt.

☐ I am the plaintiff or an attorney of record for the plaintiff in this lawsuit, and I mailed a copy of the summons and complaint by first-class mail to the defendant together with two copies of a notice and acknowledgment and received the attached notice and acknowledgment form within twenty days after the date of mailing.

☐ Other [specify]: _____

☐ I was unable to execute service because: _____

_____

My fee is $ _____.

**To be completed if service is by a sheriff or deputy sheriff:**

Date: _____          SHERIFF OF _____ COUNTY, ARKANSAS

                                By: _____
                                [Signature of server]


                                _____
                                [Printed name, title, and badge number]

**To be completed if service is by a person other than a sheriff or deputy sheriff:**

Date: _____          By: _____
                              [Signature of server]


                              _____
                              [Printed name]

Address: _____


_____

Phone: _____

Subscribed and sworn to before me this date: _____


                              _____
                              Notary Public


My commission expires: _____


Additional information regarding service or attempted service:


_____


_____



Arkansas Judiciary

**Case Title:**     CHRISTOPHER MILLER V FIRST AUTOMOTIVE
                    SERVICE CORP

**Case Number:**    23CV-18-955

**Type:**           SUMMONS - FILER PREPARED

So Ordered

B. Donohue

Electronically signed by RADONOHUE on 2018-06-27 10:49:46     page 4 of 4



**CROWDER McGAHA, LLP**
ATTORNEYS AT LAW
5507 Ranch Drive, Suite 202
Little Rock, AR 72223

William T. Crowder
wcrowder@crowdermcgaha.com

Corey D. McGaha*
cmcgaha@crowdermcgaha.com

Phone: 501.205.4026
Fax: 501.367.8208
www.crowdermcgaha.com

*Also admitted in Texas

June 27, 2018

SENT BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

First Automotive Service Corporation
c/o Corporation Service Company
300 Spring Building, Suite 900
300 S. Spring Street
Little Rock, AR 72201-2425

SENT BY CERTIFIED MAIL,
RETURN RECEIPT REQUESTED

Credit Acceptance Corporation
c/o Corporation Service Company
300 Spring Building, Suite 900
300 S. Spring Street
Little Rock, AR 72201-2425

Re:   *Christopher Miller, et al. v. First Automotive Service Corporation, et al.*
Case No. 23CV-18-955
Circuit Court of Faulkner County, Arkansas, 2nd Division
SERVICE COPY OF PLAINTIFF'S COMPLAINT & SUMMONS

Dear Agent:

Enclosed is a file-marked, service copy of:

1.   Plaintiffs' Complaint with Exhibits; and

2.   Summonses to Defendants;

In the above-referenced Action.

Cordially yours,

Will Crowder

Enclosures (as stated)

cc:   Christopher and Kaci Miller

Page 1 of 1



**CERTIFIED MAIL**

**CERTIFIED MAIL**

$8.880
US POSTAGE
FIRST-CLASS
FROM 72201
06/27/2018
stamps
endicia

9414 7118 9956 0341 2786 34

Credit Acceptance Corporation
c/o Corporation Service Company
300 Spring Bldg
300 S Spring St Ste 900
Little Rock AR 72201-2425

ELECTRONICALLY FILED
Faulkner County Circuit Court
Crystal Taylor, Circuit Clerk
2018-Jul-25   15:53:57
23CV-18-955
C20D02 : 9 Pages

IN THE CIRCUIT COURT OF FAULKNER COUNTY, ARKANSAS
2ND DIVISION

CHRISTOPHER MILLER and
KACI MILLER                                                                    PLAINTIFFS

vs.                                        Case No. 23CV-18-955

FIRST AUTOMOTIVE SERVICE
CORPORATION, CREDIT ACCEPTANCE
CORPORATION, and JOHN DOES 1-10                           DEFENDANTS

### ANSWER TO PLAINTIFFS' COMPLAINT ON BEHALF OF
### SEPARATE DEFENDANT FIRST AUTOMOTIVE SERVICE CORPORATION

Comes Separate Defendant, First Automotive Service Corporation ("First Automotive"),

by and through its attorneys, Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C., and for its

Answer to Plaintiffs' Complaint, states as follows:

1.      With regard to Paragraph 1 of Plaintiffs' Complaint, First Automotive denies the

allegations for which Plaintiffs seek to hold First Automotive liable. First Automotive further

denies Plaintiffs are entitled to the relief requested. First Automotive affirmatively asserts that

certain contractual provisions afforded denial of coverage and that it was not involved in any

repossession of Plaintiffs' Vehicle, as such term is defined in Plaintiffs' Complaint.

2.      First Automotive is without sufficient information or knowledge to admit or deny

the allegations in Paragraph 2 of Plaintiffs' Complaint and therefore denies the allegations.

3.      With regard to Paragraph 3 of Plaintiffs' Complaint, First Automotive admits that

it is a foreign corporation with an office located in New Mexico and that it may be served with

process as listed on the Arkansas Secretary of State's website. First Automotive admits that it

sells Vehicle Service Contracts and that it is listed as the "Administrative Obligor" on certain

Vehicle Service Contracts. First Automotive denies any remaining allegations in Paragraph 3 of

Plaintiffs' Complaint.

1

4.     Paragraphs 4 and 5 of Plaintiffs' Complaint are not directed at First Automotive, and, therefore, no response is required. To the extent a response is deemed required, First Automotive denies the allegations to the extent directed at it.

5.     First Automotive is without sufficient information or knowledge to admit or deny the allegations in Paragraph 6 of Plaintiffs' Complaint and therefore denies the allegations

6.     With regard to Paragraph 7 of Plaintiffs' Complaint, First Automotive admits Plaintiffs have cited Ark. Const. Amend. 80 § 6(A) for the proposition that this Court has subject-matter jurisdiction over this matter. First Automotive denies the allegations to the extent inconsistent with the law and facts of this case.

7.     With regard to Paragraph 8 of Plaintiffs' Complaint, First Automotive admits Plaintiffs have cited Ark. Code Ann. §  16-4-101(B) and the Due Process Clause of the Fourteenth Amendment to the United State Constitution for the proposition that this Court has personal jurisdiction over the parties. First Automotive denies the allegations to the extent inconsistent with the law and facts of this case.

8.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraphs 9 and 10 of Plaintiffs' Complaint and therefore denies the allegations.

9.     With regard to Paragraph 11 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached a Retail Installment Contract to their Complaint. First Automotive denies the allegations to the extent inconsistent with the Retail Installment Contract.

10.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 12 of Plaintiffs' Complaint and therefore denies the allegations.

2

11.     With regard to Paragraph 13 of Plaintiffs' Complaint, First Automotive admits Separate Plaintiff Kaci Miller entered into a Vehicle Service Contract with First Automotive (the "Contract"). First Automotive denies the allegations to the extent inconsistent with the Contract.

12.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 14 of Plaintiffs' Complaint and therefore denies the allegations.

13.     With regard to Paragraph 15 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached a Superior Protection Plan Brochure to their Complaint. First Automotive denies the allegations to the extent inconsistent with the Superior Protection Plan Brochure. First Automotive is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 15 and therefore denies the allegations.

14.     With regard to Paragraph 16 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached a blank copy of a Vehicle Service Contract to their Complaint. First Automotive denies the allegations to the extent inconsistent with the Vehicle Service Contract. First Automotive further asserts that Plaintiffs' Complaint should be dismissed under Rule 10(d) of the Arkansas Rules of Civil Procedure for failure to attach as an exhibit to Plaintiffs' Complaint an executed copy of the contract upon which Plaintiffs' base their claims against First Automotive.

15.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraph 17 of Plaintiffs' Complaint and therefore denies the allegations. Upon information and belief, however, First Automotive affirmatively asserts that Plaintiffs' Vehicle had tires that were not compliant with the vehicle manufacturer's original specifications.

6353164.1

16.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraphs 18 and 19 of Plaintiffs' Complaint and therefore denies the allegations.

17.     With regard to Paragraph 20 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached an exhibit entitled "Crain Buick Repairs" to their Complaint. First Automotive denies the allegations to the extent inconsistent with the "Crain Buick Repairs" exhibit. First Automotive is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 20 and therefore denies the allegations.

18.     With regard to Paragraph 21 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached an exhibit entitled "SouthwestRe Payment" to their Complaint. First Automotive denies the allegations to the extent inconsistent with the "SouthwestRe Payment" exhibit. First Automotive is unaware of the definition with which Plaintiffs may give "Third Party Administrator," and First Automotive therefore denies the allegations. First Automotive admits that the "SouthwestRe Payment" exhibit lists under SouthwestRe a New Mexico address. First Automotive is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 21 and therefore denies the allegations.

19.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraphs 22 and 23 of Plaintiffs' Complaint and therefore denies the allegations.

20.     With regard to Paragraph 24 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached an exhibit entitled "Crain Buick Repairs" to their Complaint. First Automotive denies the allegations to the extent inconsistent with the "Crain Buick Repairs" exhibit.

21.     First Automotive is without sufficient information or knowledge to admit or deny

4

the allegations contained in Paragraph 22 [sic] of Plaintiffs' Complaint and therefore denies the allegations.

22.     With regard to Paragraph 23 [sic] of Plaintiffs' Complaint, upon information and belief, First Automotive admits certain inspections were performed on the Vehicle. First Automotive is without sufficient information or knowledge to admit or deny the remaining allegations contained in Paragraph 23 [sic] and therefore denies the allegations.

23.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraphs 24 [sic], 25, 26, 27, and 28 of Plaintiffs' Complaint and therefore denies the allegations.

24.     With regard to Paragraph 29 of Plaintiffs' Complaint, First Automotive admits Plaintiffs attached an exhibit entitled "Order to Impound Repo" to their Complaint. First Automotive denies the allegations to the extent inconsistent with the "Order to Impound Repo" exhibit. First Automotive affirmatively asserts that it was not involved in any repossession of Plaintiffs' Vehicle.

25.     With regard to Paragraph 30 of Plaintiffs' Complaint, First Automotive admits the Contract was canceled based upon certain contractual provisions. First Automotive affirmatively asserts that other contractual provisions also afforded denial of coverage and cancellation of the Contract.

26.     First Automotive is without sufficient information or knowledge to admit or deny the allegations contained in Paragraphs 31, 32, 33, 34, and 35 of Plaintiffs' Complaint and therefore denies the allegations.

27.     With regard to Paragraph 36 of Plaintiffs' Complaint, First Automotive incorporates its responses to Paragraphs 1–35.

6353164.1

28.     First Automotive denies the allegations contained in Paragraphs 37 and 38 of Plaintiffs' Complaint to the extent Plaintiffs seek to hold First Automotive liable. First Automotive affirmatively asserts that it was not involved in any repossession of Plaintiffs' Vehicle.

29.     With regard to Paragraph 39 of Plaintiffs' Complaint, First Automotive incorporates its responses to Paragraphs 1–38.

30.     First Automotive denies the allegations contained in Paragraphs 40, 41, and 42 of Plaintiffs' Complaint to the extent Plaintiffs seek to hold First Automotive liable. First Automotive affirmatively asserts that it was not involved in any repossession of Plaintiffs' Vehicle.

31.     With regard to Paragraph 43 of Plaintiffs' Complaint, First Automotive incorporates its responses to Paragraphs 1–42.

32.     With regard to Paragraph 44, First Automotive denies the allegations to the extent inconsistent with the Arkansas Deceptive Trade Practices Act and Arkansas law interpreting the same.

33.     First Automotive denies the allegations contained in Paragraphs 45, 46, and 47 of Plaintiffs' Complaint.

34.     With regard to Paragraph 48 of Plaintiffs' Complaint, First Automotive incorporates its responses to Paragraphs 1–47.

35.     First Automotive denies the allegations contained in Paragraphs 49, 50, 51, and 52 of Plaintiffs' Complaint.

36.     With regard to Paragraph 53 of Plaintiffs' Complaint, First Automotive incorporates its responses to Paragraphs 1–52.

6353164.1

37.     First Automotive denies the allegations contained in Paragraphs 54, 55, and 56 of Plaintiffs' Complaint.

38.     With regard to Paragraph 57 of Plaintiffs' Complaint, First Automotive joins in Plaintiffs' request for a jury trial and hereby requests trial by twelve-person jury.

39.     First Automotive denies the relief requested in the WHEREFORE clause of Plaintiffs' Complaint.

40.     First Automotive denies generally and specifically each and every other material allegation in Plaintiffs' Complaint not otherwise specifically admitted in the preceding paragraphs.

41.     First Automotive affirmatively asserts that any alleged repairs necessary to the Vehicle were not covered under the Contract.

42.     First Automotive affirmatively asserts that Plaintiffs' Complaint fails to state facts upon which relief can be granted and should therefore be dismissed pursuant to Rule 12(b)(6) of the Arkansas Rules of Civil Procedure.

43.     Without alleging any fault on the part of any separate defendant, should there be a finding of any fault, this case should proceed in conformity with the Arkansas Uniform Contribution Among Joint Tortfeasors Act, the Arkansas Civil Justice Reform Act of 2003, and other applicable Arkansas law. First Automotive specifically pleads that it is entitled to a credit or reduction and/or indemnity and contribution in any verdict by the percentage of fault of any party or non-party that settles this claim with Plaintiffs or that may be found to be at fault.

44.     First Automotive specifically reserves the right to plead further herein following a full and complete investigation of this matter, including the reservation of all cross claims, counterclaims, third party complaints, and all affirmative defenses required to be plead in its

initial pleading.

45.     First Automotive specifically reserves the right to file an Amended Answer following a full and complete investigation of this matter.

46.     First Automotive specifically preserves the defenses listed in Rule 12(h)(1) of the Arkansas Rules of Civil Procedure.

47.     Pleading affirmatively, First Automotive pleads and preserves all affirmative defenses expressed within, or contemplated by, Rule 8(c) of the Arkansas Rules of Civil Procedure.

**WHEREFORE**, Separate Defendant First Automotive Service Corporation prays that Plaintiffs' Complaint against it be dismissed with prejudice, for its costs and attorney's fees, and for all other just and proper relief to which it is entitled.

This 25th day of July, 2018.

Respectfully submitted,

**MITCHELL, WILLIAMS, SELIG,
GATES & WOODYARD, P.L.L.C.**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
(501) 688-8800
mbrunson@mwlaw.com

By:*/s/ Matthew Brunson*
Matthew L. Brunson (Ark. Bar No. 2016214)

8

## CERTIFICATE OF SERVICE

I, Matthew Brunson, hereby certify that a copy of this pleading was filed this 25th day of July, 2018 via CM/ECF, which shall provide notice to the following:

Will Crowder
Corey D. McGaha
Crowder McGaha, LLP
5507 Ranch Drive, Suite 202
Little Rock, AR 72223
*Counsel for Plaintiffs*

*/s/ Matthew Brunson*
Matthew L. Brunson

9