IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CHRISTOPHER MILLER
and KACI MILLER                                              PLAINTIFFS

v.                                    No. 4:18-cv-502-DPM

FIRST AUTOMOTIVE SERVICE
CORPORATION; CREDIT
ACCEPTANCE CORPORATION;
and JOHN DOES 1-10                                          DEFENDANTS

ORDER

The question is where the parties' dispute will be handled. When the Millers bought a used Chevy Silverado pickup from II Friends Auto Sales, they financed it through Credit Acceptance. № 2. As part of their installment contract, the Millers also bought and financed a service contract from First Automotive. II Friends handled all the paperwork. And in another contemporaneous document, the Millers and the dealer agreed to arbitration. II Friends signed for itself, Credit Acceptance, and "any third party providing goods or services in connection with the origination, servicing, and collection of amounts due under the Contract if such third party is named as a party between [the Millers, the dealer, and others]." № 4-2 at 1. First Automotive was named in the underlying retail installment contract. № 4-1 at 2. The arbitration agreement covers sale-related disputes—broadly defined to include

matters of contract, tort, and statute. There was a carve-out for each side: the Millers could go to small claims court; and Credit Acceptance could repossess the pick-up for nonpayment. № 4-2 *at 1*. The parties' arbitration agreement also contained a rejection option: without affecting any other contract term, the Millers could reject arbitration by mailing a letter to a Michigan address within thirty days after they bought their truck. № 4-2 *at 2*. The Millers signed the arbitration agreement. And they didn't send a letter opting out.

The Millers' pick-up had oil-pressure problems. They took it to a GM dealership, Crain Buick, who worked on the truck twice. First Automotive paid for the first repairs. The second time, First Automotive wouldn't pay. It eventually canceled the service contract, reporting that there was an issue with mileage tampering and then saying that the Millers had put oversized wheels and tires on the vehicle. Credit Acceptance repossessed the truck. In this case, the Millers plead repossession contrary to Arkansas law, conversion, deceptive trade practices, and fraud. Credit Acceptance moves for a prompt arbitration and dismissal. First Automotive seeks the same relief. Their motions are granted as modified. The background is the acknowledged strong federal policy favoring arbitration. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).

Is this arbitration agreement valid? *Dickson v. Gospel for ASIA, Inc.*, 902 F.3d 831, 834 (8th Cir. 2018). Yes. It was part of the financing deal

between the Millers and Credit Acceptance. The deal was done in several documents, but they form one whole. *Integon Life Insurance Company v. Vandegrift*, 11 Ark. App. 270, 276, 669 S.W.2d 492, 495 (1984). The deal embraced First Automotive. The retail installment contract named that company, which provided the extended service contract in connection with the origination of the Millers' debt. II Friends made the arbitration agreement for itself and others. And the Millers' claims against First Automotive are a "dispute" about a "service included in the Contract." № 4-2 *at 1*. First Automotive is a third-party beneficiary of the Miller/Credit Acceptance agreement to arbitrate disagreements. *Little Rock Wastewater Utility v. Larry Moyer Trucking, Inc.*, 321 Ark. 303, 307, 902 S.W. 2d 760, 763 (1995).

It's true, as the Millers say, that First Automotive's service contract contains a merger clause: "This contract contains the entire agreement between You and Us and supersedes all prior and contemporaneous agreements (both written and oral) between You and Us concerning the subject matter of this Contract." № *7 at 8 (bold removed)*. Why doesn't this provision undermine First Automotive's right to invoke the arbitration clause as a third-party beneficiary? This collision is more virtual than real. If the Millers and First Automotive had made a side agreement about arbitration, or anything else, their merger clause would probably be dispositive against that agreement. But this kind of clause doesn't necessarily bar the Millers and Credit

Acceptance (or any other party) from contracting for the benefit of First Automotive. The Court must instead look at the whole and gather the parties' intentions. Here, Credit Acceptance, First Automotive, and the Millers intended for their disputes to be arbitrated.

Relying on Arkansas law, the Millers say the arbitration agreement lacks mutuality. *E.g., Tyson Foods, Inc. v. Archer,* 356 Ark. 136, 141-42 (2004). The Court disagrees. With reasonable carve outs for the buyers (small claims) and the lender (repossession), all sale-related disputes must be arbitrated. There doesn't appear to be any non-arbitration alternative for First Automotive. If that company refused to pay for a repair, though, the Millers had the additional right to make a claim to Dealers Assurance Company, the insurer who stood behind First Automotive's obligations. All this is a bit tangled, but it doesn't create a mutuality problem.

Does the parties' arbitration agreement cover the Millers' claims? *Dickson,* 902 F.3d at 834. Yes. The agreement covers "any dispute or controversy arising out of or in any way related to the Contract. . .[.]" *№ 4-2 at 1.* These are wide words. The agreement specifically extends to torts (such as conversion and fraud) and statutory claims (such as Arkansas's Deceptive Trade Practices Act and the repossession statute). *Ibid.* While Credit Acceptance had the right after default to pursue repossession without going to arbitration first, the parties' disputes — Did the Millers default? Did Credit Acceptance follow Arkansas law

on repossession? Did First Automotive honor the service agreement? —
are matters for resolution in arbitration.

The motions are not granted across the board for two reasons.
Credit Acceptance and First Automotive seek an order requiring the
Millers to start arbitration within two months. *№ 4 at 3 & № 7 at 2.* But
the parties' contract contains no deadlines. The companies also ask the
Court to dismiss the case rather than staying it. While the Court may
have discretion to do this, the Federal Arbitration Act prefers a stay, so
the Court can enforce the arbitrator's decision in due course, if need be.
9 U.S.C. § 3; *Green v. SuperShuttle International, Inc.,* 653 F.3d 769-70 (8th
Cir. 2011).

\* \* \*

Motions to compel arbitration, *№ 4 & 7,* granted as modified.
Case stayed and administratively terminated. If no party seeks relief
by 30 October 2019, the Court will lift the stay and dismiss the
complaint without prejudice.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge


_24 October 2018_